## GAMER PAPER CO. et al. v. TUSCANY.
### (No. 7173.)

(Court of Civil Appeals of Texas. San Antonio. June 4, 1924. On Motion for Rehearing, July 1, 1924.)

1. **Master and servant** ☞80(10)—**Evidence held to support findings in action for agreed share of profits.**

In action by employé to recover percentage of profits earned by corporation in excess of 6 per cent. of its capital stock agreed to be paid for plaintiff's services, evidence *held* to support findings for plaintiff.

2. **Appeal and error** ☞221—**Corporation sued for percentage of profits held not entitled to complain for first time on appeal that valuation of stock upon which jury based findings was erroneous.**

In action on contract for percentage of profits earned by defendant corporation above 6 per cent. on its capital stock of $200,000, defendant *held* not entitled to complain on appeal for the first time that valuation of total assets at first of year, upon which the jury based their computation of profits, was arbitrarily and erroneously fixed.

3. **Partnership** ☞20—**Contract between sole stockholder and another for division of corporate profits held to create quasi partnership.**

Where the principal stockholder, who was practically the sole owner of the corporation, agreed to pay to plaintiff in consideration of latter's services a percentage of all profits in excess of 6 per cent. on capital stock, a quasi partnership was created between such stockholder and plaintiff, and neither the former nor the corporation could defeat recovery on ground of ultra vires or want of authority in stockholder.

4. **Corporations** ☞1—**Equity will look through form of corporation practically owned by single individual, and will preserve rights of stockholders.**

Where a corporation is practically a "one-man" corporation a court of equity will look through the form of the arrangements, to the substance, and in a proper case will preserve the rights of the stockholders.

5. **Contracts** ☞78—**Performance of services held sufficient consideration to support agreement for reasonable salary.**

Performance of services *held* a sufficient consideration to support a subsequent agreement for a reasonable salary for such services, and the subsequent determination of the amount of such services did not affect the agreement originally made.

6. **Partnership** ☞146(2)—**Note executed for partnership purpose by partners as joint makers became partnership obligation.**

A note executed for partnership purpose by the parties as joint makers became a partnership obligation.

7. **Deposits in court** ☞11—**Corporation held not entitled to complain of order directing stock placed in registry to be returned to owner.**

A corporation *held* not entitled to complain of trial court's order directing stock placed in registry to be returned to plaintiff stockholder as the owner thereof, the corporation having no interest in it.

### On Motion for Rehearing.

8. **Appeal and error** ☞221—**Judgment** ☞256(7)—**Inclusion of interest in judgment held fundamental error, findings of jury not authorizing it.**

Where the jury did not make a finding of interest on the sum found for plaintiff in an action not based upon any contract in writing that indicated a definite ascertained amount, trial court's inclusion of such interest in the judgment *held* fundamental error; interest in such cases being only recoverable as damages.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by F. H. Tuscany against the Gamer Paper Company and Charles Gamer, who interposed a cross-action. Judgment for plaintiff, and defendants appeal. Reformed, and as so reformed affirmed.

James & Conner, of Fort Worth, for appellants.

Cooke, Dedmon & Potter and Clay Cooke, all of Fort Worth, for appellee.

COBBS, J. This was an action on contract brought by the appellee, F. H. Tuscany, against appellants, the Gamer Paper Company, a corporation, and Charles Gamer, its president, in the district court of Tarrant county, Tex.

Appellee alleged that on January 1, 1920, he entered into a contract with the appellants, by the terms of which he agreed to work for appellants, and appellants, jointly and severally, agreed to pay him 40 per cent. of the profits earned by the corporation over and above 6 per cent. on its capital stock of $200,000. The contract was not for any definite length of time, but could be terminated by either party on giving 60 days' notice in writing. It was further alleged that appellee performed his duties under the contract from the date it was entered into until July 9, 1921, when the contract was terminated by the appellants, and "that during the year 1920 said business earned a profit of $32,-777.57 over and above the 6 per cent. interest upon its capital stock of $200,000, of which amount plaintiff was entitled to 40 per cent., or the sum of $13,311.03; that said profit was covered up and concealed by the defendants by taking inventory on January 1, 1921, at a much lower rate than the actual value of its stock of merchandise, and thereby defendants became indebted to plaintiff in the

sum of $13,311.03, which became due on or about January 1, 1921." Appellee alleged that the actual value of the stock of merchandise on hand at the end of the year 1920 was the sum of $113,136.30, but that appellants fraudulently took inventory so as to show a value of only $89,379.73, making a difference of $23,777.57.

Appellee alleged that appellants were indebted to him in the sum of $1,006.47 on account of salary, dividends on stock owned by him, and money advanced by him to the corporation, as shown by the statement of his account on the books of the company, and in the further sum of $2,000 as a "bonus" which appellants agreed to give him. The allegations with reference to the item of bonus are:

"That at the time of the taking of said inventory on January 1, 1921, at prices greatly below the actual wholesale value of the stock of merchandise, to conceal said profits above mentioned, plaintiff complained of said facts to the defendants, and in order to induce plaintiff to let said profits remain in the business until the next succeeding year the defendants promised and agreed to pay plaintiff the sum of $2,000 bonus."

Appellee alleged that the profits for the year were further covered up by reason of the fact that appellants fraudulently charged off on its books $3,000 for depreciation on real estate, whereas the real estate enhanced in value during 1920 to the extent of $4,000, making a difference of $7,000, and by reason of appellants' fraudulent failure to take into consideration as an asset an account of $2,000 owed appellant corporation by the De Soto Manufacturing Company.

It was finally alleged that despite the concealments and frauds above mentioned the appellant corporation "showed a net profit for 1920 of more than 6 per cent. of its entire capital stock;" and that appellee was entitled to recover the following items:

| | |
|---|---:|
| 40 per cent. of $23,777.57 (the difference between the actual value of the stock and value shown by inventory) | $ 9,511 |
| 40 per cent. of $7,000.00 (the difference between the way the real estate was carried and the way in which it should have been carried on the books) | 2,800 |
| 40 per cent. of $2,000.00 (the De Soto Mfg. Co. debt) | 800 |
| His account for salary, dividends, advancements, etc. | 1,006 47 |
| Bonus | 2,000 |
| Total | $16,317 47 |

The appellant Gamer Paper Company filed an answer containing a general demurrer, general denial, and several other pleas. It specially denied that it made, or was bound by, the contract providing for the payment to plaintiff of a portion of the profits of the corporation; denied that Chas. Gamer had authority to bind it by such a contract; denied that it made, or was bound by, the alleged agreement to pay appellee a bonus of $2,000; and denied that it was indebted to appellee on account of salary. It pleaded that during the years 1920 and 1921 there was only one dividend declared by the board of directors, to wit, a dividend of approximately 7½ per cent. declared on May 16, 1921; that appellee was duly credited with the dividend accruing on his stock; that he was a member of the board of directors which declared such dividend, and voted in favor thereof, is bound by the action of the board, and is estopped to say that the dividend should have been larger, etc.

The appellant Chas. Gamer filed a separate answer containing a general demurrer and general denial, and most of the special pleas and denials interposed by his coappellant. In addition he pleaded that there was no consideration for the alleged promise to pay appellee a "bonus"; and that the written contract sued on was a contract between him and appellee, providing that appellee should have 40 per cent. of the dividends accruing on the stock of Chas. Gamer over and above 6 per cent., and that, if appellee was entitled to recover in any sum against him, which was not admitted, but expressly denied, such liability was more than offset by reason of the fact that he had been compelled to pay a security debt for appellee in the sum of $2,700, for which he asked judgment against appellee.

Appellee filed his first supplemental petition, in which he repeated most of the allegations of his second amended petition, and further alleged that the Gamer Paper Company, though a corporation, was in fact owned and controlled by Chas. Gamer, who held practically all of the stock, the other stockholders being appellee and Chas. Gamer, Jr., son of appellant Chas. Gamer, who held merely a qualifying share. He further alleged that the $2,000 bonus sued for "was in consideration of plaintiff leaving said profit in said business until the following year, to wit, January 1, 1922, it being understood and agreed that a proper inventory would be taken on the following January 1st, and said profits then paid to plaintiff, in addition to such other profits as might be earned during the year 1921," and that "said Chas. Gamer operated said business as his own individual business notwithstanding said corporate charter, and said business was in truth and in fact a copartnership business between plaintiff and defendant Chas. Gamer."

By supplemental answer the appellant Chas. Gamer interposed a duly verified denial of partnership.

The cause was submitted to the jury on the following special issues:

"(1) Did the defendant Chas. Gamer, on or about January 8, 1921, agree with plaintiff that defendants would pay the note of $2,000 at the First National Bank? Answer: Yes.

"(2) What do you find from the evidence was the reasonable value of the stock of merchandise in question at the time that the inventory thereof was taken, to wit, on or about January 1, 1921? Answer: $98,750.00."

Based upon the foregoing verdict, the court entered judgment in favor of appellee against both appellants, jointly and severally, for the sum of $5,435.32, being the sum of the following items: $3,719.90, considered as appellee's share of dividends which should have been paid on the stock held by appellee and appellant Chas. Gamer by reason of the fact, as found by the jury, that the merchandise on hand at the end of the year was worth $9,370.27 more than shown by the inventory; plus $1,006.47, the balance of "Account" adjudged to be due appellee; plus $708.95, as interest on said items at the rate of 6 per cent. from January 1, 1921. The court further rendered judgment "that the stock in the Gamer Paper Company owned by the plaintiff, F. H. Tuscany, and now in the possession of the clerk of this court awaiting the outcome of this controversy be by said clerk delivered back to the plaintiff, F. H. Tuscany." The contentions of the appellee with respect to the $2,000 account due from the De Soto Manufacturing Company, and the alleged improper deduction on account of depreciation in real estate, were abandoned on the trial, or at any rate were not submitted to the jury or affirmed in the judgment.

The contract sued upon is as follows:

"Agreement entered into between Chas. Gamer, Sr., president of the Gamer Paper Company, and Gamer Paper Company, party of the first part, and F. H. Tuscany, vice president of Gamer Paper Company, party of the second part.

"Article 1. Chas. Gamer, party of the first part, herein agrees to give F. H. Tuscany, party of the second part, 40 per cent. of net profits of said Gamer Paper Company, over and above 6 per cent. on total capital stock of $200,000. Rate shall be figured on dividend basis.

"Art. 2. F. H. Tuscany, party of the second part, in consideration of the above, agrees to continue in business with and to help and assist the party of the first part in the conduct of the business of the Gamer Paper Company until such time that either party wishes to annul this agreement, which may be done by either party by giving sixty days' notice in writing.

"Art. 3. It is further agreed that the above division of the profits is in addition to the fixed salary of the party of the second part, which may be changed from time to time by the board of directors.

"Art. 4. It is further agreed that any other stockholders in the Gamer Paper Company with exception of parties to this contract may participate in their pro rata proportion in all the profits of said company. The forty per cent. net to apply only on profits of stock of party of the first part and second part over six per cent.

"Art. 5. [Scratched out.]

"Art. 6. It is further agreed that this contract is in effect from January 1st, 1920.

"Under our hand and seal, this the 12th day of February, 1920.      F. H. Tuscany.
     "Chas. Gamer.

"Chas. Gamer, Jr., Witness."

The court in its decree found the following undisputed facts:

"That the plaintiff and defendants entered into the written contract as alleged, whereby defendants agreed and promised to pay plaintiff 40 per cent. of the net profits of the Gamer Paper Company over and above 6 per cent. upon its authorized capital stock, said 40 per cent. to be figured only upon the stock owned by the plaintiff F. H. Tuscany and the defendant Chas. Gamer, and that the stock owned by plaintiff Tuscany and defendant Gamer amounts to $198,500 of the $200,000 of stock in said Gamer Paper Company. That the open account of the Gamer Paper Company, or running account between the Gamer Paper Company and F. H. Tuscany, shows a balance due by the Gamer Paper Company to the plaintiff F. H. Tuscany of $1,006.47, which amount is undisputed. That judgment has been rendered in favor of the First National Bank against the plaintiff F. H. Tuscany and the defendant Chas. Gamer upon the $2,000 note involved in this suit, and which the jury found should be paid by the defendant Chas. Gamer, and which the defendant Chas. Gamer has paid off, the amount of which he is seeking to recover herein on his cross-action against the plaintiff Tuscany. That the inventory taken January 1, 1921, by the defendants, showed the total value of the stock of merchandise on hand as $89,379.73, upon which the profit of said company for the preceding year was figured, and a dividend declared thereon, and that the plaintiff's portion of said profit based upon said inventory is accounted for in the open account upon which there is a balance of $1,006.47, due by the Gamer Paper Company to the plaintiff F. H. Tuscany. That, the jury having found that the value of the merchandise on January 1, 1921, was $9,370.27 more than the value as taken by said inventory by the defendants, which would show that much additional profit made during said year, the portion of same to which the stock in said corporation owned by the plaintiff and defendant would be entitled to being $9,299.72, the plaintiff is entitled to receive 40 per cent. of said sum, to wit, the sum of $3,719.90."

[1, 2] In submitting the brief and for discussion thereof, appellants submit as propositions first and second reference to their first and second assignments, without copying either or making further statement or reference thereto. Their third proposition being that, appellee having brought suit for a portion of the net profits earned by Gamer Paper Company during the year 1920 by virtue of a contract, the burden was upon him to prove the amount of the net profits earned. Their fourth proposition is that, in calculating profits earned by a business, it is necessary to take into consideration

amount of stock on hand at the beginning of the year as well as at the end of the year, and that the same standard of valuation be used in taking both inventories. Under the foregoing first, second, third, and fourth propositions, appellants set out much testimony and make an argument.

As we understand the main complaint, it is because the profits were arrived at by taking an arbitrary valuation of the goods on hand at the beginning of the year, against the actual value of the goods on hand at the end of the year, without knowing what the real value of the goods was at the beginning of the year, and that the burden was on the appellee to establish his allegations of profits made by proving facts from which profits could be arrived at, at the beginning and end of the year.

We think the court's judgment and basis of calculation to determine the profits earned is supported by the evidence. The valuation of $200,000 taken as the basis of values at the beginning was agreed upon. There was no issue raised upon that basis in appellants' pleadings, and no request made for any finding of the jury thereupon. No profit or dividend could be made until the assets exceeded that amount.

Appellants are in no position to raise this question for the first time on appeal. They began the year with the agreed total assets of $200,000. At the close of the year they admittedly had $214,824.55, making a dividend as declared of $14,824.55. The proof showed in addition they had in the year $23,-776.57 in actual value of additional merchandise; actual assets of $214,824.55, which, with the $23,776.57, makes the aggregate sum of $238,601.12, total value. The jury, however, cut down the additional profits represented by merchandise to $9,370.27, and the court awarded to appellee 40 per cent. of this additional profit.

We do not think appellants are in any condition to complain because there is no mention made in the pleading of any discrepancies in the accounting, nor proof offered in respect thereto. There was no issue submitted to the jury concerning same, but appellants have seen proper to stand upon their proposition that they were entitled to an instructed verdict. It was in the power of appellants, perhaps, to have reduced the foregoing findings, had they so desired, because the proof was largely in their possession.

We have a case here where the court and jury, upon the pleadings and upon the evidence offered, have arrived at what seems a fair judgment. We do not believe, in such a case, where appellants neither pleaded nor attempted to prove anything showing erroneous finding, or any injury that would have resulted differently based upon another theory, they can here and now be allowed to set aside such a determination by securing an instruction from the court in their behalf.

[3, 4] The legal effect of the transaction was to create a quasi partnership in the business between appellee and Gamer. A good business had been built up through appellee's services, whereby there was accumulated a large stock of merchandise under a profit-sharing arrangement with appellee, which business was taken over by appellant, and appellee was put out, and appellants in this controversy relied upon the proposition that the contract was ultra vires, without consideration, and that Chas. Gamer had no authority to bind the corporation. The Gamer Paper Company is what is known as a "one-man" corporation, as the capital stock of $200,000 was owned by appellant Chas. Gamer, except $4,000 acquired by appellee as a salary bonus during the years preceding the contract and $1,000 given to Charles Gamer, the son, to allow him to qualify as a director. Under such arrangements a court of equity may look through the form of the arrangements to the substance, and in a proper case preserve the rights of the parties.

The parties to this suit are the stockholders of the so-called corporation or partnership. Excepting the son, Charles Gamer, Jr., and appellee, the said Charles Gamer is the sole owner, manager, and director of all the stock and assets of the corporation.

As said in Re Rieger, Kapner & Altmark (D. C.) 157 Fed. 609:

"The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a proper case ignore it to preserve the rights of innocent parties, or to circumvent fraud."

The United States Supreme Court expressed the same thought in McCaskill v. U. S., 216 U. S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590:

"A growing tendency is therefore exhibited in the courts to look beyond the corporate form to the purpose of it. * * * Such cases as these are becoming common and the courts are becoming more and more inclined to ignore the corporate existence when necessary to circumvent fraud."

Lord Mansfield, in Johnson v. Smith, 2 Burr. 962, said:

"The court would not endure that a mere form or fiction of law, introduced for the sake of justice, should work a wrong contrary to the real truth and substance of the thing."

In Oriental Investment Co. v. Barclay, 25 Tex. Civ. App. 543, 64 S. W. 80, the Court of Civil Appeals said:

"If the relation between the investment company and the operating company was a mere cloak to cover up fraud, then there can be no

doubt that the court is authorized to ignore the apparent relation between the parties in order to circumvent fraud."

And in St. L. & S. F. Ry. Co. v. Hale (Tex. Civ. App.) 153 S. W. 411:

"When one corporation makes use of another as its instrument through which to perform its business, the principal corporation is really represented by the agents of the subcorporation, and its liability is just the same as if the principal corporation had done the business in its own name."

And in Bond-Reed Hdw. Co. v. Walsh (Tex. Civ. App.) 181 S. W. 248:

"The testimony showed that the corporations were but the outward manifestations of Geo. H. Bond, owned and controlled by him. He was the inspiration and soul of the corporations and the court properly rendered judgment against him."

We overrule the assignments.

[5] Considering appellants' propositions covering the $2,000 additional salary, the jury found that Gamer agreed to pay it, and the only defense asserted to this item is that it was without consideration or based upon a past consideration. The contract provides that the 40 per cent. of the profits was in addition to the salary which was not fixed in the contract, but he was entitled to a reasonable salary, and the mere fact that he had already performed services would not preclude the parties from thereafter fixing the total reasonable salary, which was done. The performance was a sufficient consideration to support an agreement for a reasonable salary. The determination of the amount or value thereof does not affect the agreement originally made.

[6] The parties were not only joint makers of the note, but engaged in the partnership business, and this debt in effect became a partnership obligation. 30 Cyc. 440; 26 Cyc. 1032.

[7] We see no error of the court in directing the $4,000 of stock that belonged to appellee, properly placed in the registry of the court, to be returned to him. Appellants had no interest in it, and can have no possible ground of complaint.

We see no error properly assigned that requires a reversal of this case. We have carefully examined each and all of them, and they are overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

[8] We have read with much interest and fully considered the excellent motion for a rehearing submitted by appellant. For the first time our attention is called to the fact that the judgment awarded appellee interest from January 1, 1921, in the sum of $708.95.

This suit is not based upon any contract in writing that indicated a definite ascertained amount, and of course no basis is shown upon which to predicate any part of the judgment for interest, and to that extent the judgment presents fundamental error. In such cases interest is only recoverable as damages, and, in the absence of any finding by the jury thereon, it was fundamental error on the part of the court to render judgment therefor. Railway v. Addison, 96 Tex. 61, 70 S. W. 200; Morriss v. Hesse (Tex. Com. App.) 231 S. W. 317; Joseph v. John Bostick (Tex. Civ. App.) 264 S. W. 129; Mack-International Motor Truck Corp. v. E. L. Coonrod (Tex. Civ. App.) 264 S. W. 129.

The judgment will be so reformed as to strike out of it the item of interest, being $708.95, and we here reform the judgment of the court below so that appellee shall recover of and from appellant only the sum of $4,726.37, with interest at the rate of 6 per cent. per annum from July 3, 1923, the date of the judgment below; as so reformed the judgment is affirmed.

Reformed and affirmed.