BOND–REED HARDWARE CO. et al. v. WALSH. (No. 5568.)*

(Court of Civil Appeals of Texas. San Antonio. Dec. 8, 1915. Rehearing Denied Jan. 5, 1916.)

1. FRAUDULENT CONVEYANCES  &#9901;&#61;298—INTENT TO DEFRAUD—EVIDENCE.

Evidence held to justify a finding that various sales by defendant were not in good faith, but were made with a view to delay creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 892–895; Dec. Dig. &#9901;&#61;298.]

2. RECEIVERS &#9901;&#61;22—REMEDIES OF CREDITORS—DISPOSITION OF PROPERTY.

Where the assets of a debtor were about to be placed beyond a creditor's reach, his right to a receiver need not rest alone in equity, but also exists under the express provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 2128.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 30; Dec. Dig. &#9901;&#61;22.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Action by F. T. Walsh against the Bond-Reed Hardware Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

C. A. Keller, of San Antonio, for appellants. M. E. Buckley and Webb & Goeth, all of San Antonio, for appellee.

CARL, J. F. T. Walsh sued the Bond-Reed Hardware Company, the Bond-George Hardware Company, John H. Bond, H. W. Fuos, and H. S. Taylor for rents alleged to be due him on a building, and applied for a receiver. A. E. Staacke, who is alleged to be doing business under the name of A. E. Staacke Automobile Company, was also made a defendant. The petition alleged that both of the hardware companies were chartered for practically the same purpose; that the business of each was carried on in San Antonio; that John H. Bond, H. S. Taylor, and H. W. Fuos are the sole owners of their stock and are the officers of said corporations; that the same stock of goods, fixtures, and appliances used in the business were owned by the said Bond, Fuos, and Taylor, the Bond-Reed Hardware Company, and the Bond-George Hardware Company, all conducted as one business; that said parties leased the building of plaintiff from month to month, in which to carry on said business, the rental being $75 per month, and a balance of $895.10 in rents is alleged to be still due and owing to plaintiff, and a landlord's lien is asserted to secure said rents. The court heard proof and appointed a receiver, from which order this appeal is prosecuted. It is charged that A. E. Staacke claims some interest in the property, and so he or his company was made a defendant.

The petition further charges as follows:

"Plaintiff alleges, further, that if said defendants shall claim that, at any time after or upon the granting of the charter to the said Bond-Reed Hardware Company, it, the said Bond-Reed Hardware Company, succeeded said Bond-George Hardware Company as owner of any or all of said property, or business, 'or both, and that said John H. Bond, H. W. Fuos, and H. S. Taylor, the Bond-Reed Hardware Company, and the Bond-George Hardware Company, or any of them, intended to take said lease contract in the name of the Bond-George Hardware Company only, but for the use and occupancy of the owner and owners of all of said property and all of said business, so that there should be no liability to plaintiff for the rental of said premises on the part of any of said parties, other than said Bond-George Hardware Company, then, in such case, plaintiff alleges that the said John H. Bond, H. W. Fuos, H. S. Taylor, the Bond-Reed Hardware Company, and the Bond-George Hardware Company, did not disclose to plaintiff such intention, or such ownership, but they intentionally and purposely concealed such intention and ownership from plaintiff, with the fraudulent and unlawful design and purpose of defrauding plaintiff and of putting the said assets and property beyond the reach of any attempt by plaintiff to obtain payment and satisfaction for his claims for rent; and plaintiff further alleges that any and every plan and device intended and used by the said John H. Bond, H. W. Fuos, H. S. Taylor, the Bond-Reed Hardware Company, and the Bond-George Hardware Company, whereby the liability to plaintiff, or the liability to other creditors, who contracted and gave credit on the faith and in the belief they were dealing with

and crediting the owner of said stock, property, and business, should appear to be against the said Bond-George Hardware Company only, while plaintiff's said premises were used and occupied and said property and business were owned by the said parties, other than the said Bond-George Hardware Company, was and is unlawfully and fraudulent device and fence adopted and intended to be used by the said defendants for the purpose of hindering, delaying, defeating, and defrauding plaintiff and the other creditors, and all of the said parties participating therein, or consenting thereto, became and are liable personally and officially for the full amounts of the claims of all of said creditors, including the plaintiff herein.

"Plaintiff alleged further that the said John H. Bond, H. W. Fuos, H. S. Taylor, the Bond-Reed Hardware Company, and the Bond-George Hardware Company, led plaintiff to believe and understand, and that he did believe and understand, in consequence of the statements, acts, and conduct of the said parties at the time of the beginning of the said lease contract and at the time of each monthly renewal thereof, that said lease contract was applied for and made directly to and for the owner of said property and business, and he alleges that said rental contract and every renewal thereof was in fact and in truth made to the owner of the said property and business.

"Plaintiff alleges further that said John H. Bond, H. W. Fuos, H. S. Taylor, the Bond-Reed Hardware Company, and the Bond-George Hardware Company, have been unlawfully and fraudulently managing and conducting the said business so that the said Bond-George Hardware Company shall be a shield and cover behind and under which the said Bond-Reed Hardware Company and other owners of the stock of merchandise belonging to and used in said business and the other property belonging thereto and used therefor may be placed and kept beyond the reach of creditors, including the plaintiff, for the purpose of hindering, delaying, defeating, and defrauding all such creditors, including plaintiff; that the said parties, having been purchasing for said business in the name of the Bond-George Hardware Company, at the same time or after the receipt of such merchandise so purchased, have placed and have pretended to have placed the title and ownership of such merchandise, without paying for the same, in the name of the said Bond-Reed Hardware Company for the purpose of defrauding the vendors of such merchandise, and other creditors, including plaintiff out of payment of their claims.

"Plaintiff alleges that, if it shall appear on the trial of this case that the said Bond-Reed Hardware Company has been and is the owner of the property and assets of said business, and that the liabilities, or any of the liabilities, including any of the liability to plaintiff for the rental for the premises occupied for such business, are and have been contracted for in the name of the said Bond-George Hardware Company, then and in any such case the plaintiff alleges that in all such contracts made in the name of the Bond-George Hardware Company, including the said rental contract, the said Bond-George Hardware Company was in fact the agent of the said Bond-Reed Hardware Company, and both the said Bond-George Hardware Company and the said Bond-Reed Hardware Company became and are liable for all contracts so made and all liabilities so incurred, including the said rental contracts and the said liabilities to plaintiff.

"Plaintiff alleges, further, that said John H. Bond, H. W. Fuos, and H. S. Taylor, who are at one and the same time all of the stockholders, officers, and directors of both of said alleged corporations, have been and are keeping the charters to the same alive for the purpose so adjusting and placing rights and liabilities as to hinder, delay, defraud, and defeat creditors, including the plaintiff, out of their just claims; and plaintiff alleges, also, that if it be conceded that the charters of said alleged corporations have been kept alive for a lawful purpose, which, however, plaintiff emphatically denies, then the property and assets of both of said alleged corporations constitute trust property and a trust fund for the benefit primarily of the creditors of each, and every transfer of property and assets from one to the other without an adequate consideration is unlawful and fraudulent as to all creditors, including plaintiff, injured by such transfer, and, on the other hand, in the case of all transfers from one to the other of property or assets, the proceeds of such property and assets are alike a trust fund and trust property for the benefit of creditors, including plaintiff, and in every such case of transfer with or without an adequate consideration the same has been done for the purpose of defrauding creditors, including plaintiff, and in every such case there has been an unlawful and fraudulent conversion, disposition of property and assets for said unlawful and fraudulent purpose, and the said John H. Bond, H. W. Fuos, and H. S. Taylor have in every such case misapplied and misappropriated such property and assets in order to place the same beyond the reach of creditors, including plaintiff, and all of said officers and directors became and are liable, personally and officially, for the claims of plaintiff and of all creditors injured thereby."

And further that various suits had been filed against the Bond-George Hardware Company, and judgments obtained, and that no inventory had been taken of the stock and the goods were old, out of date, and the business being run at a constant loss and the assets were being wasted and misapplied.

The defendants answered and filed various exceptions, and in a cross-action sought damages to their business on account of the tearing down of the front of the building when Commerce street was being widened by the city of San Antonio. And further it was alleged that the stock had been sold to one J. C. Timberlake, who in turn had sold it to the Central Hardware Company, another corporation.

The Bond-George Hardware Company was chartered in 1908 with a capital stock of $35,000, and J. H. Bond testified that he owned all the stock except two shares. He testified, further:

That the Bond-George Company sold the stock of merchandise to the Bond-Reed Hardware Company in 1910. "They sold their stock with the privilege of drawing from it anything they needed. Ever since that time we have been making all purchases for the stock for the business in the name of the Bond-George Hardware Company. All the different contracts I have made since that time have been made in the name of the Bond-George Hardware Company. When this property purchased in the name of the Bond-George Company arrives, it is sold just as soon as it arrives, and we make out a bill to them (Bond-Reed). It is retail. The Bond-Reed business. The Bond-George doesn't carry any stock, but buys from the wholesaler and immediately on its arrival here turns it over to the Bond-Reed Company. It has no stock of goods in San Antonio, and has not had since that date. The Bond-George has some contracts by which it makes profits, and it has the right to withdraw any amount of goods it wants to to fill orders from that stock. That is the reason I offered Mr. Walsh a settlement of his ac-

count at 25 per cent. off on the goods. That offer was made in behalf of the Bond-George Company. The Bond-Reed Company could not do it. They pay over all the money to Bond-George Company and that cancels that part of it. I didn't assess that stock last month. I didn't assess at all this year. I would have assessed it in the Central Hardware Company if I could have gotten down. The Bond-Reed Hardware Company had control of that stock of goods in September—in January, 1915. I don't think I ever swore, in my answer in the county court, that Bond-Reed then owned the goods, because it would have been incorrect. I will be in control of the Central Hardware Company until all debts are paid. Neither Timberlake nor the Central Hardware Company has had charge of the business, as we were waiting for the charter. Timberlake was the only one that signed the notes for the goods. The whole plan is to put enough assets back of them to guarantee the payment of those notes. The Central Hardware Company has assets, vendor liens, lands, lots, etc., amounting to $80,000. The Central Hardware Company has not paid any rents. They simply haven't taken in any money. * * * We will pay the rent since the Central Hardware Company went in; as a matter of fact, the Central Hardware Company owe it to the Bond-George Company for that period. The Bond-George Company under the old arrangement contracted to pay all the expenses of the Bond-Reed Company, every dollar every day for four years is to be turned over to the Bond-George Company."

J. H. Bond was president of both the Bond-George and the Bond-Reed Hardware Companies, and, when the stock of merchandise was sold by the Bond-George to the Bond-Reed Company, J. H. Bond was still in charge, and the proceeds of sales was to go to the Bond-George Company. When the Bond-Reed Company sold the stock to J. C. Timberlake, Bond, as president and principal stockholder of both the hardware companies named, remained in charge of all the receipts as well as the stock of goods for the benefit of the Bond-George Company. Timberlake then sold to the Central Hardware Company, a concern which Bond says had been chartered, but its charter had not arrived, and he was still in possession for the same purposes he had been all along, and in the same building.

In fact, a very happy idea was hit upon, it seems—one new and interesting to the commercial world—whereby the Bond-George Company, which had no stock, would buy goods, turn them over to its successors, who would sell them and turn the proceeds over to the Bond-George Company, which seems to have been execution-proof. In this easy way, one company became liable for all the debts, while the others sold the goods for the benefit of the stockholders of the old company, without being liable for the purchase of the goods and for rent, etc.

We might add that the directors of both the Bond-George and the Bond-Reed companies are the same. Bond states that Fuos, an employé, owns one share in the Bond-Reed Company; but Fuos doubts this, and says that he does not own any stock or interest in the business, and that he knows nothing about the ownership of the property. He had even forgotten who the other director was, besides himself and Bond.

[1, 2] The pleadings are very long, and the evidence given on the hearing is very full. It is ample, however, to justify the trial court in concluding that these various sales were not in good faith, but made with a view of hindering and delaying creditors. The rent due appellee was protected by a lien. The Bond-George Company, chartered for $35,000, owed more than it could pay. We think it might well be concluded that, notwithstanding the various alleged sales, the Bond-George Company was still the real owner of the property, and that it was insolvent. And, since it appears that the assets were about to be placed beyond appellee's reach, the right to a receiver in this case does not have to rest alone on equity, but is a statutory right under the facts alleged and proved. The court's action was eminently proper. Article 2128, Vernon's Sayles' Stat. 1914; Cotulla v. Mortgage Co., 86 S. W. 339; Shaw v. Shaw, 51 Tex. Civ. App. 55, 112 S. W. 127; Lynn v. Bank, 40 S. W. 228; De Barrera v. Frost, 33 Tex. Civ. App. 580, 77 S. W. 639.

The judgment is affirmed.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes