## ANDREWS et al. v. ARCHER COUNTY.
### No. 12668.

Court of Civil Appeals of Texas. Fort Worth.
Oct. 31, 1931.

Rehearing Denied Nov. 28, 1931.

Bullington, Humphrey & King, Weeks, Morrow, Francis & Hankerson, and Luther Hoffman, all of Wichita Falls, for appellants.

E. S. Weldon, of Archer City, and A. H. Britain, of Wichita Falls, for appellee.

DUNKLIN, J.

This is an appeal from an order of the district court of Archer county appointing a receiver of the assets of the People's Exchange Bank and other individual defendants, hereinafter named, and also for a temporary writ of injunction in aid of the receivership, which has been prosecuted by some of the defendants, although one of the defendants has not appealed. The order appointing the receiver and directing issuance of the writ of injunction was made upon an ex parte hearing by the trial court, upon the original petition of Archer county, plaintiff in the case without notice to any of the defendants, which was duly verified; no evidence being introduced upon the hearing.

The facts hereinafter recited were all alleged in plaintiff's petition, and the trial court's action was based upon the assumption that those allegations were true. The People's Exchange Bank, an unincorporated private banking institution and a copartnership, for many years had been engaged in the banking business in the town of Archer City, Archer county, Tex., where it has received deposits, made loans and discounts, and has engaged generally in the usual banking business. W. L. Andrews, C. R. Conner, W. E. Forgy, L. C. Herron, P. J. Hays, J. F. Meurer, and James Harrison were all members of the partnership firm. The banking business transacted by the firm was done in the name of People's Exchange Bank, and through duly elected officers, consisting of a president, vice-president, cashier, and a board of directors.

On February 14, 1931, the People's Exchange Bank was duly and legally chosen by the commissioners' court of Archer county as the county depository of its funds for a period of two years, beginning on said date and ending at the February term, 1933, of the commissioners' court. As a condition for that appointment, the bank executed to Archer county a depository bond in accordance with the provisions of chapter 2, title 47, Rev. Civ. Statutes, beginning with article 2544, which bound the bank to pay checks drawn on it by the county treasurer, and to account to the county for all funds belonging to the county which might be deposited with it. The sureties on the depository bond included the following members of the partnership firm, to wit: W. L. Andrews, C. R. Conner, L. C. Herron, J. F. Meurer; also the following named persons who were not members of the partnership firm, to wit: S. M. Cowan, Claude Cowan, J. H. Roberson, P. J. Hays, and W. T. Hutcheson.

On July 13, 1931, while the depository bond was in full force and effect, the bank closed its doors and ceased to do business.

The purpose of this suit was to recover for the sum of $1,193,410.06 which had been deposited with the bank by the county while the bank was acting as the duly appointed depository under the appointment above mentioned, and while the above-mentioned surety bond was in full force and effect, no claim of any lien to secure such indebtedness being asserted.

Before the institution of the suit, several drafts in large amounts had been drawn on the bank by the county, all of which were dishonored, and the bank failed and refused to pay any portion of the sums sued for. In addition to the amounts due to the county, the bank owes to depositors $100,000, and other creditors approximately $70,000. It has assets in the form of notes owing to it in the sum of $1,000,000; overdrafts owing to it by other banks aggregating $150,000; bonds amounting to $40,000; real estate and bank building with furniture and fixtures of the value of $35,000; and there is due the bank from other banks further sums additional to those enumerated above. There is immediate

need of collection of those choses in action or else putting the same in a collectible condition. The bank claims the equitable title to certain lands, the legal title to which stands in the name of defendant P. J. Hays, cashier of the bank and one of the partners, by reason of the fact that the same was purchased with the bank's funds.

The assets owned by the bank and by the partners composing it, and the sureties on the depository bond, are insufficient to satisfy the debts of the bank now due and unpaid; and both the bank and those partners and sureties are each and all wholly insolvent.

The partners composing the People's Exchange Bank have been guilty of gross and inexcusable negligence in handling its affairs, in that they have wrongfully permitted funds to be withdrawn therefrom and converted to the use either of themselves or to others financially insolvent, and have permitted the assets of the bank to be intermingled with their own, thus rendering a separation of such funds necessary. No one is now in charge of the bank's assets with authority to collect and preserve the same, and by reason thereof the assets are in danger of loss, or of removal and injury.

Since the closing of the bank, J. H. Roberson, S. M. Cowan, Claude Cowan, and W. T. Hutcheson, who were sureties on the depository bond, have executed and delivered deeds of trust on their property, and a deed of conveyance by J. H. Roberson, all for the alleged purpose of defeating the collection of plaintiff's debt. Those deeds of trust and the deed of conveyance were as follows:

Two deeds of trust by W. T. Hutcheson, of date July 15, 1931, on certain land situated in Archer county; the first of which purports to be given to secure payment of a promissory note, of date July 15, 1931, payable two years after date to the order of Weeks, Morrow, Francis & Hankerson, a partnership firm composed of W. F. Weeks, Harry C. Weeks, Tarlton Morrow, C. I. Francis, and James Hankerson; also a second deed of trust purporting to be given to secure payment of a promissory note, of date July 15, 1931, in favor of Sally F. Hutcheson, wife of W. T. Hutcheson, due one year after date.

One deed of trust executed by J. H. Roberson, of date July 15, 1931, on 470 acres of land in Archer county, which purports to secure a note for $5,000 in favor of the above-mentioned partnership firm of Weeks, Morrow, Francis & Hankerson, due two years after date, July 15, 1931; also a deed of conveyance executed by J. H. Roberson and wife, of date July 15, 1931, purporting to convey certain real estate in the town of Archer City to Llewellyn Roberson in consideration of a vendor's lien note in favor of the grantors in the sum of $5,000 due two years after date.

One deed of trust executed by Sam Cowan and Claude Cowan of date July 15, 1931, covering some 20,000 acres of land situated in Baylor and Archer counties, purporting to secure payment of a certain promissory note in the sum of $12,500 in favor of Bullington, Humphrey & King, a partnership composed of Orville Bullington, Leslie Humphrey, and John B. King; also a second mortgage lien on the property covered by the last-mentioned deed of trust purporting to secure payment of a promissory note in favor of J. H. Turbeville and his wife, Mrs. J. H. Turbeville, in the sum of $200,000.

According to allegations in plaintiff's petition, each and all of the deeds of trust and the conveyance mentioned above were simulated transactions, without consideration, and executed for the purpose of hindering, delaying, and defrauding plaintiff in the collection of its debt.

The People's Exchange Bank, and all of the partners composing said banking firm and all of the sureties on the depository bond are insolvent and own no other property than that noted which is subject to payment of their debts, and all of them were made defendants in the suit. The members of the two partnerships, Weeks, Morrow, Francis & Hankerson, and Bullington, Humphrey & King, and J. H. Turbeville and wife, and Llewellyn Roberson were also made parties defendant in the suit for the purpose only of injunctive relief against a disposition of liens and titles acquired after the bank closed its doors. Plaintiff prayed for judgment for its debt against the bank and against the partners composing the bank and the sureties on the depository bond; also for a cancellation of the deeds of trust recited above, as well as the deed of conveyance to Llewellyn Roberson. All of those instruments have been duly recorded in the records of deeds of trust and deeds in the respective counties where the lands covered are situated. Plaintiff further prayed for the appointment of a receiver to take charge of all the assets of the bank and of all the property of the partners and of the sureties on the depository bond, including that covered by the mortgages and the deed executed by them, above noted. W. H. Taylor was appointed receiver, vested with that authority, and after he had qualified as such by taking the oath and executing the bond required by the court he took charge of all the assets mentioned belonging to the bank. In compliance with a prayer in plaintiff's petition, the court also ordered the issuance of a temporary writ of injunction restraining the respective mortgage lienholders above mentioned from transferring the liens and promissory notes recited therein, pending final hearing of the case, and a like writ restraining Llewellyn Roberson from disposing of the land conveyed to him as shown above,

upon the filing of an indemnity bond by plaintiff in favor of those parties in the sum of $25,000.

▋ This appeal is prosecuted by the following named defendants only: J. F. Meurer, W. T. Hutcheson, Sally Hutcheson, J. H. Roberson, Llewellyn Roberson, and the members of the partnership firm of Weeks, Morrow, Francis & Hankerson. The People's Exchange Bank took no steps to appeal, and although the other defendants, not included with the above-named appellants, filed an appeal bond, they have dismissed their appeal in this court. It follows, therefore, that the orders of the trial court, in so far as they affect all the defendants other than appellants, will be left undisturbed and in full force and effect.

Appellants are in no position to complain of the orders of the trial court in placing the property of other defendants in the hands of the receiver, or in granting injunctive relief as against any of them. Their only grounds of complaint are confined to the action of the court in appointing the receiver for the properties claimed by them individually, and in restraining some of them from disposing of the liens and notes mentioned and the property covered by those liens.

Article 2293, Rev. Civ. St. 1925, reads as follows:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases:

"1. In an action by a vendor to vacate a fraudulent purchase of property; or by a creditor to subject any property or fund to his claim; or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

"2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed or materially injured; or that the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt.

"3. In cases where a corporation is insolvent or in imminent danger of insolvency; or has been dissolved or has forfeited its corporate rights.

"4. In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

Article 2319 reads:

"In all matters relating to the appointment of receivers, and to their powers, duties and liabilities, and to the powers of the court in relation thereto, the rules of equity shall govern whenever the same are not inconsistent with any provision of this chapter and the general laws of the State."

In Carter Bros. v. Hightower, 79 Tex. 135, 15 S. W. 223, 224, Justice Gaines, after quoting what is now subdivision 1 of article 2293, said:

"But we think this statute, notwithstanding the broad terms in which it is couched, is not to be construed as applying to every case in which a creditor seeks to secure the satisfaction of a debt, and in which there is danger that the funds or property belonging to the debtor will be lost or destroyed. Such a construction would allow the appointment of a receiver in an ordinary action at law for the recovery of a debt. We cannot think that the legislature intended such a radical departure from the old-established principles of the common law, and from the long-settled practice of the courts in our state. Was it intended that, whenever a debtor failed to meet his obligation, he should be liable to have his property and credits put into the hands of a receiver, merely because there might exist danger of its being lost, removed, or physically impaired? We think not. The act must be construed as applying only to the funds and property upon which the creditor has a lien for the satisfaction of his debt. The words, 'by a creditor to subject any property or fund to his claim,' are to be limited to some particular fund or property belonging to a debtor upon which the creditor has a specific lien. It is true that, in a general sense, a creditor who brings an action at law to recover a debt seeks to subject all the defendant's property to the payment of his claim. But he cannot obtain relief against any particular article or class of property, unless a lien be acquired upon it. by the levy of an attachment or the service of a writ of garnishment. Should the legislature see proper to pass an insolvent law, the act will doubtless provide for an equitable distribution of the debtor's effects among all its creditors. We are of opinion it was not the intention, by the act under consideration, to enable a creditor, through the appointment of receiver, to place the effects of his debtor, because insolvent, in the hands of the court for the satisfaction of his debt, unless he have a lien upon it."

That decision has been followed in this state without modification, and it is in accord with the general rule followed throughout the country. See, also, 1 Clark on Receivers, pp. 215, 216, 221, 242, 243, and authorities there cited.

Appellee stresses the views expressed by the author in 1 Clark on Receivers, pages 212 to 233, strongly advocating a modification of the general rule that a receiver will not be appointed at the instance of a simple contract

creditor. We shall quote the following from the beginning of his discussion:

"The general rule is that a receiver will not be appointed at the instance of a simple contract creditor. This rule is based on the U. S. Constitutional provision guaranteeing a jury trial in certain cases and on the technicalities of common law and equity jurisdiction handed down to us from our English ancestors. The writer believes the rule just mentioned to be ordinarily a salutary rule. Nevertheless conditions in our country are rapidly changing, new situations are being created, particularly in business; and our courts, although bound by precedents, are gradually adapting their procedure to fit new conditions as they arise. * * *

"It is the author's opinion that there are exceptional cases where a court having general equity and common law jurisdiction in order to do justice to the litigants, in appointing a receiver at the instance of a simple contract creditor, and that it may do so, consistent with the traditions of the common law and usages and rules of equity, interpreted in the light of modern conditions."

Following what is there said, the author suggests many conditions in which a relaxation of that general rule might be indulged consistently with the general principles of equity jurisprudence. But, however persuasive that reasoning may appear, we do not feel free to depart from the long-established precedent of a contrary effect representing the crystallized thought of the highest courts of the country for centuries, and which is a part of the law of the land to be followed by this court to the same extent as any other law of our state. Nor do we believe that decisions cited by appellee, such as Bond-Reed Hardware Co. v. Walsh (Tex. Civ. App.) 181 S. W. 248; Driskill v. Boyd (Tex. Civ. App.) 181 S. W. 715; Woodward v. Smith (Tex. Civ. App.) 253 S. W. 847, and Richardson v. McCloskey (Tex. Civ. App.) 228 S. W. 323, wherein receiverships were upheld, can be given controlling effect in this case, by reason of distinguishing facts, applicable chiefly under subdivision 1 of article 2293 of the statutes, while in appellee's brief it appears that its claim of right to a receivership is made under subdivision 4 of that statute.

Article 3997 of our statutes reads:

"Every gift, conveyance, assignment, transfer or charge made by a debtor, which is not upon consideration deemed valuable in law, shall be void as to prior creditors, unless it appears that such debtor was then possessed of property within this State subject to execution sufficient to pay his existing debts; but such gift, conveyance, assignment, transfer or charge shall not on that account merely be void as to subsequent creditors, and though it be decreed to be void as to a prior creditor, because voluntary, it shall not for that cause be void as to subsequent creditors or purchasers."

And in Dittman v. Weiss Bros., 87 Tex. 614, 30 S. W. 863, 864, Chief Justice Gaines said:

"That creditors may bring suit to subject property fraudulently conveyed by the debtor to the payment of their debts without having first acquired a lien thereon is the settled law in this state (Cassaday v. Anderson, 53 Tex. 527; Shirley v. Railway, 78 Tex. 131, 10 S. W. 543). * * *"

However, the right to bring such a suit is quite different from the right to a receivership in aid of the suit which, under the authorities already cited, was not established. Furthermore, in the cited case, Cassaday v. Anderson, 53 Tex. 527, it was held that judgment for plaintiff in such a suit would not, ipso facto, give the creditor any character of lien on the land, but could only serve to remove the cloud of title created by the fraudulent conveyance as an obstruction to a fair sale after judgment in plaintiff's favor. And it was further said:

"If the property had been fraudulently conveyed, and it was feared that, pending the suit and before judgment, other rights might have intervened, Veal had an adequate remedy at law by the levy of attachment under the statute, and by which he would have acquired a specific lien.

"After judgment, he could proceed by levy and sale of the property under execution in the first instance. Lynn v. Le Gierse, 48 Tex. 138; Freeman on Executions, § 430."

And the opinion quotes with approval from Bump on Fraudulent Conveyances, in part, as follows:

"A creditor must establish his demand at law, and obtain a lien upon the property, before the transfer interferes with his rights or he has any title to claim relief in equity. No creditor can be said to be delayed, hindered or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach by a fraudulent conveyance. Such specific right does not exist until he has bound the property by judgment, or by judgment and execution, as the case may be, and has shown that he is defrauded by the conveyance in consequence of not being able to procure satisfaction of his debt in a due course of law. Then, and then only, he acquires a specific right to be satisfied out of the property conveyed, and shows that he is a creditor, and is delayed, hindered and defrauded by the conveyance."

We conclude, further, that the court erred in granting the prayer for writs of injunction against those appellants who procured the notes, mortgages, and deeds of conveyance shown above after the bank ceased to do business, on an ex parte hearing of the

petition, and without giving them an opportunity to be heard. None of those appellants owed the debt sued for. As against them, the action was to cancel those instruments for fraud in their acquisition, to the end that the property might later be subjected to payment of the personal judgment sought against the other defendants, should same be recovered. It was collateral only to the main suit. The petition fails to show an emergency and an immediate pressing necessity existing for such summary action against those appellants, and thus deprive them of their day in court; no showing being made that they were about to dispose of the notes or property. Indeed, the absence of the existence of such an emergency is indicated by the fact that the record fails to show that plaintiff ever filed the bond required by the order of the court as a condition for the issuance of the writ of injunction, and fails to show that the writ was ever issued. Thurman v. Kirkland (Tex. Civ. App.) 260 S. W. 677; International & G. N. Ry. v. Anderson County (Tex. Civ. App.) 150 S. W. 239; Gill v. McFaddin (Tex. Civ. App.) 210 S. W. 722; 32 C. J. 307, 308; Holman, County Judge, v. Cowden & Sutherland (Tex. Civ. App.) 158 S. W. 571.

Our foregoing conclusions have been reached independently of the fact that it appears from plaintiff's petition that the lands involved might have been attached, which apparently would have been an adequate legal remedy, precluding the right to the appointment of a receiver, and also the right to the issuance of the temporary injunction. No writ of attachment was sued out, and the petition contains no allegation of reasons for not resorting to that remedy. It was suggested by counsel for appellee in oral argument that, manifestly, it would be impossible for the county to give a bond in double the amount of the debt sued for in order to procure a writ of attachment, and therefore that course would not be required by a court of equity as a condition for the appointment of a receiver and the granting of the injunction. However, the petition embodies no allegation to that effect, and we know of no authority and have been cited to none which, in our opinion, would bear out the suggestion so noted. To the contrary, the rule seems to be that a very strict showing is required for the appointment of a receiver or for a temporary injunction that plaintiff has no other adequate remedy at law. Hill v. Brown (Tex. Com. App.) 237 S. W. 252; 53 C. J. p. 25.

For the reasons stated, the order of the trial court making the receivership applicable to the promissory notes and mortgages held by some of the appellants, and to property held by other appellants under deeds of conveyance executed after the bank closed its doors, as shown above, and to the property of appellant J. F. Meurer, W. T. Hutch-

eson, and J. H. Roberson, and granting the writ of injunction above mentioned, is reversed, and the cause will be remanded to the trial court for further proceedings not inconsistent with this decision. In all other respects, as said before, the orders of the trial court will be left undisturbed.

### On Motion for Rehearing.

Upon a further examination of the record, we find that plaintiff did execute and file the bond for $25,000, required by the court as a condition precedent for the issuance of the writ of injunction sought, and the same was duly approved. And we will add that, although the record fails to show that a writ of injunction was thereafter issued, that fact is immaterial, since the injunction granted by the court was nevertheless effective, if appellants had notice of it, which they do not deny. Accordingly, the statement made, through oversight, to the effect that the bond was never executed, and the assignment of the supposed failure of plaintiff to execute and file the bond as an additional reason why plaintiff did not show sufficient grounds for the issuance of the writ, are withdrawn from our original opinion.

In its motion for rehearing, appellee complains of our failure to discuss the decision of the Court of Civil Appeals in Byrne v. First National Bank of Lake Charles, La., 20 Tex. Civ. App. 194, 49 S. W. 706, cited in appellee's briefs, and in which case a writ of error was denied by our Supreme Court.

We examined and duly considered the decision, but did not discuss it, because we believed it to be plainly distinguishable from the case presented to us by this appeal in these particulars. In that case the appointment of a receiver of the assets of an insolvent partnership, at the suit of a simple contract creditor, was affirmed. But that receivership did not involve the individual property of the members of the partnership firm nor of any other person, and it appeared that one of the partners had died and all the assets of the firm were in the possession and control of the surviving partner, who was wasting them, and who was colluding with another to defraud the creditors of the firm, and also the estate of his deceased partner, by appropriating the assets to his own use. The decision was based on the conclusion reached, that the surviving partner held the assets as a trustee for the benefit of creditors and others interested therein, and that therefore the creditors had an "equitable or quasi lien" upon the assets, which would warrant the appointment of a receiver; and the court further held that, in the absence of a statement of facts in the record, it would be presumed that there was sufficient proof to sustain all the allegations in plaintiff's petition for a receivership.

In this case the plaintiff was given the full benefit of that decision in that all the assets of the bank were placed in the hands of a receiver, and no complaint has been made of that action of the trial court.

The only appeal which has been prosecuted, and which we have considered, was for the appointment of a receiver of the individual property of certain persons who were members of the partnership bank, and of others who were outsiders and in no manner connected with the bank or the transaction of any of its business, and our disposition of the appeal related to them only. So far as they were involved, the action against them for the appointment of a receiver of their property was separate and distinct from that for a receivership of the assets of the firm, and if it can be sustained, then it would follow that, in a suit by a simple contract creditor, a receiver could be appointed to take charge of the property of any one who has failed to pay his debts and is insolvent; notwithstanding the well-established rule of equity to the contrary, discussed in our original opinion. We do not believe that the decision referred to above could be construed as going to that extent. And in addition to the authorities already discussed in our original opinion, we will cite also 1 Clark on Receivers, § 202.

With the correction of the error in our original opinion noted above, the motion for rehearing is overruled.