JUNKIN et al. v. STERCHI FURNI-
TURE CO.

No. 9835.

Court of Civil Appeals of Texas.
San Antonio.

March 25, 1936.

J. M. Mothershead and Carter & Stiern-berg, all of Harlingen, for appellants.

Lorimer, Brown & Davis, of Harlingen, for appellee.

SMITH, Chief Justice.

This action was brought by Sterchi Furniture Company, a San Antonio corporation, against Joseph K. Junkin and his wife, Lola, who were engaged in the furniture business at Harlingen under the trade-name of Junkin Furniture Company, and against a Mercedes bank. The action was one for an accounting and for injunction, as well as for the appointment of a receiver for the stock, accounts, and bank deposits of the Junkins. The trial judge, in chambers and without notice, granted the temporary injunction, restraining the Junkins from disposing of any of their stock in trade or collecting any of their accounts, or withdrawing any of their bank deposits, and to restrain their bank from paying out any of the funds from the Junkins' account. The judge, at the same time, set down the application for receivership to be heard at a later day, and ordered that the defendants be given notice thereof. This notice was served upon Mrs. Junkin and the bank, but not upon Joseph K. Junkin, who was "without the jurisdiction of the court," apparently ill in another state.

Upon the hearing, the court appointed a receiver as prayed for by the Sterchi Company, and the Junkins have appealed.

In its petition below appellee alleged that on May 23, 1933, it and Joseph K. Junkin

"made and entered into a written memorandum of agreement, by the terms of which" Junkin gave appellee his note for $4,800, payable in installments running to June 15, 1935; that "by the terms of that agreement, and a recital in said note, said indebtedness and notes at the time of their said execution were 'purported' to be secured by a collateral assignment of certain furniture contracts 'and/or' accounts receivable in the aggregate sum of $6,000. Said furniture accounts, as so provided in said written agreement, to be active, live and valid accounts of the defendant Junkin, created in the operation of the business of the Junkin Furniture Company"; that Junkin further agreed to "substitute new and active accounts from time to time, as collections might be made on said assigned accounts, new accounts sufficient to maintain collateral security of 6000 until all the aforesaid indebtedness shall be fully paid." It was further alleged that under said agreement Junkin was required to keep a separate account in a bank and deposit therein all collections from the furniture contracts and accounts, and to account to appellee each month on the amount of collections received, and to promptly pay appellee each month the amount due on said debt, and that J. K. Junkin "and/or" Lola Junkin became a trustee for the benefit of appellee to the extent of such collections, and "became bound and obligated under said trust and fiduciary relationship to promptly pay and account to appellee upon said collections." It was further alleged that appellants had failed and refused to pay said indebtedness as it became due, although they had collected "large" sums upon their accounts receivable, in amounts not known to appellee but to appellants alone, which they have failed and refused to deposit in a special bank account and hold in trust for appellee, or account therefor to appellee, as agreed; that such collections have greatly reduced appellee's collateral security without substituting new accounts therefor; that a large number of said accounts have become worthless because appellants have repossessed the furniture constituting the security therefor; that appellants have failed and refused to disclose to appellee the status of said accounts or account to appellee therefor.

Appellee further alleged that it has no adequate remedy at law for the preservation of its security or for ascertaining the amount of depreciation thereof or the names and amounts of new, live, active, and valid accounts receivable now owned by appellants, which should be substituted for the accounts which have been collected, depreciated, or otherwise dissipated by appellants; that it is entitled to an accounting and full information and full performance of said written agreement, and will suffer irreparable loss and damage unless such accounting is compelled by the court; that Joseph K. Junkin is now beyond the jurisdiction of the court, and Lola Junkin is secreting at night "and/or" disposing of all tangible assets of both appellants, and is threatening to leave the jurisdiction of the court, and to put said assets beyond that jurisdiction.

Appellee further alleged that a receivership is necessary to protect, preserve, and save the value of appellee's security and locate and preserve appellee's interest in furniture sold and disposed of by appellant and contracts and accounts receivable accruing therefrom, for which appellants refuse to account; that, by reason of appellants' failure and refusal to account therefor, appellee cannot determine the value and extent of its security, or furniture sold and delivered in bona fide transactions, or the amount and extent of resulting good, new accounts and contracts; that appellee's collateral security is in danger of material injury by the absence of Joseph K. Junkin, and is now insufficient to discharge said debt, and will further depreciate unless the furniture, contracts, and accounts receivable, and other assets are at once located, verified, and preserved by a receiver, by whom, alone, can those assets be preserved.

It was further alleged that Joseph K. Junkin, beyond the jurisdiction of the court, cannot be restrained from disposing of the concern's assets which appellants are holding "in a trust or fiduciary capacity for the benefit of" appellee, who has no adequate remedy at law to prevent unauthorized disposition of those assets pending this proceeding, and will suffer irreparable loss unless a receiver is appointed to preserve and protect said assets; that an accounting of appellants' business is necessary, requiring that an auditor be appointed to examine said business, otherwise appellee will suffer irreparable loss with no adequate remedy at law.

Appellee further alleged that Lola Junkin is now in sole charge of said business,

and is advertising and disposing of same in a "going-out-of-business" sales campaign, and is surreptitiously removing and secreting large parts of the stock of furniture, with the purpose of hurriedly disposing of the business and removing the books and records from the jurisdiction of the court, and depriving appellee of any remedy for its debt, or the enforcement of its lien and security; that appellants had failed and refused to keep a deposit of the proceeds of their sales in a separate bank account, as agreed, but had commingled those proceeds with their other funds in a general account, and were about to get away with the whole account, and it is necessary that the bank be restrained from paying out any of said deposit, or otherwise appellee would suffer irreparable loss, for which it has no adequate remedy, etc.

Upon those allegations appellee prayed for injunction restraining appellants from collecting or removing any of their stock, securities, moneys, bank deposits, or other assets, during the pendency of the suit, and restraining the bank from paying out any funds belonging to appellants or their business, and for appointment of a receiver "with ample powers to protect, preserve, locate and save the value of the tangible assets, contracts, accounts receivable, and moneys of the said Joseph K. Junkin and/or Lola E. Junkin, operating as the Junkin Furniture Company; that defendants be required to make a full accounting of collections received, contracts and accounts receivable now held or pledged as security for the plaintiff's indebtedness, and for all funds received under the trust or fiduciary relationship for the benefit of this plaintiff; and that an auditor be appointed to investigate and examine and report upon the books, records and accounts of the defendants Joseph K. Junkin and/or Lola E. Junkin, trading as the Junkin Furniture Company; that the defendants be cited to appear and answer herein, and that upon final hearing hereof, the defendants Joseph E. Junkin be compelled to place plaintiff's security in proper marginal condition as hereinbefore alleged, with substitution of live, active and valid contracts and accounts receivable; that said injunction be made permanent; that all costs and expenses of this proceeding, including a reasonable attorney's fee, be taxed against the defendants Joseph K. Junkin and Lola E. Junkin; and for such other and further relief, special and general, at law and in equity to which plaintiff may be justly entitled."

To that pleading appellant Joseph K. Junkin made no answer, but Lola E. Junkin filed what is termed her "plea of coverture," and special exceptions to the petition. If that plea and special exceptions were presented to and acted upon by the court, no complaint thereat is made by appellee by assignment of error, and it is therefore unnecessary to further notice them here.

Mrs. Junkin also answered on the merits, first, by general denial, and, secondly, by sworn special answer, denying that appellants were indebted to appellee "in the amount and as alleged"; that, if the "collateral assignment was made of date May 23, 1932, of furniture contracts 'and/or' accounts receivable; that" the hurricane of September 4 and 5, 1933, completely demolished the building in which appellants' business was conducted, and the books, records, and papers, "in many instances, were blown away, mutilated and destroyed," the repossessed furniture was greatly damaged, and much of it rendered worthless; that in "many and important instances" the furniture securing sales made were rendered worthless by the hurricane, the accounts thereon were not paid and the security "was worthless to be repossessed." Appellants denied that their books and records were to be moved away or that their assets and goods were being fraudulently disposed of. They alleged that their stock of goods was being sold in the "usual course of commercial trade, and in no instance below original invoice price, plus a reasonable profit," except, in some instances, goods damaged by flood and hurricane; that their business, as all other businesses, had suffered on account of the current general financial depression, and appellants had great difficulty in meeting prior obligations; that they had paid appellee "as much or more than a pro rata, and in fact (appellee) has been paid approximately the sum of $2,900 on such alleged indebtedness of $4,800"; that appellants have not "misused, removed at night and fraudulently any of such funds, merchandise or assets of said business," or secreted same; that, "because of the ill health and nervous condition of her husband, Joseph K. Junkin, he was forced to go to a higher altitude, and for quiet, and that this defendant has been compelled to assume and carry on such business as a means of a livelihood

for herself and dependents; that for the purpose of trying to meet the obligations, and pay this plaintiff any residue that might be owing it, and other creditors, she concluded to put on a special sale and as advertised. That at great expense and trouble she had arranged, and advertised such sale, and at prices ranging at original invoice plus 25%, and had made some sales for cash and some on contracts, and because of the malicious, wilful and wrongful acts of this plaintiff in causing such writ of injunction to be granted, she has been unable to make delivery; has suffered great, intolerable, and excruciating mental and physical pain, and damages, and will continue to suffer if the same is allowed to continue."

Upon the hearing appellee introduced in evidence its sworn petition, as well as portions of appellants' sworn special answer, and appellee's counsel testified that for several years he had represented appellee in the Harlingen section, and particularly handled appellee's collections from appellants in this transaction; that he was uncertain of the furniture contracts and accounts receivable placed as collateral security for the debt involved here; that he had frequently demanded verification of the accounts "placed as security"; that appellants agreed to render monthly accountings of collections on said accounts, but had not given "over four such monthly accounts" in the past two years; that he had "personally undertaken to verify these accounts receivable and to ascertain the correct balances due thereon," but on several occasions appellants had refused to furnish the information to him, and in many instances he had learned through personal investigation that of those purported accounts many were not real accounts, and "nothing was owed by such customers, and I have demanded that new accounts be substituted"; that appellants had failed, in each instance, for twelve months, to make such substitutions; that appellants have failed to maintain a separate bank account for collections from said accounts, but have commingled same with their personal funds; that he did not know the amount of such collections or the exact value of appellants' accounts receivable placed as security, and could not know, except by examination of appellants' books; that appellants all the while had been buying and selling merchandise for both cash and credit; that during the last three weeks appellants had been advertising and conducting a · closing out sale; that appellants' stock had been greatly reduced.

No other evidence than the testimony of appellee's attorney and the two verified pleadings was introduced.

We are of the opinion that under the facts alleged and proven appellee was not entitled to the appointment of a receiver clothed with all the powers granted him under the decree in this case. In the first place, the suit was nothing more, in effect, than for the receivership. Appellee did not allege, or attempt to prove, the balance, if anything, appellants owed on their account, nor did it pray for judgment for such balance, or for any specific relief, except (1) a "temporary injunction or temporary restraining order," first, against appellants, "restraining them from removing" anything necessary to a proper accounting "during the pendency of this proceeding," and, second, against the bank from permitting the withdrawal of any of appellants' funds; (3) for a receiver to take complete control of all of appellants' business and assets of every character, and requiring them to make a full accounting of all their business operations; (4) for the appointment of an auditor to examine and report upon the "books, records and accounts" of appellants; and, upon "final hearing," that J. K. Junkin "be compelled to place (appellee's) security in proper marginal condition as hereinbefore alleged, with substitution of live, active, and valid contracts and accounts receivable"; and (5) "that said injunction be made permanent."

Ordinarily, a receivership is authorized only at the suit of a creditor who has a lien, for the satisfaction of his debt, upon the property sought to be subjected, and with respect only to that property or those funds, specifically, to which the lien extends. 36 Tex.Jur. p. 38, § 15; Carter v. Hightower, 79 Tex. 135, 15 S.W. 223; Andrews v. Archer County (Tex.Civ.App.) 45 S.W.(2d) 227; Delcambre v. Murphy (Tex.Civ.App.) 5 S.W.(2d) 789.

It has been held, as well, that, to authorize a receivership on account of a lien upon the property sought to be subjected, such lien must be an express one. Waples-Platter Co. v. Mitchell, 12 Tex.Civ.App. 90, 35 S.W. 200.

Under the allegations in this case, appellee does not claim to have an express lien upon any property sought to be subjected to the receivership, but only a statutory sort of lien by virtue of general allegations that the alleged indebtedness was "purported" to be secured by a "collateral assignment of certain" undescribed "furniture contracts 'and/or' bills receivable in the aggregate sum of $6,000." Under the authorities cited, appellee's pleading was insufficient to bring their claim within a class authorizing receivership. The evidence was likewise insufficient to warrant the drastic remedies applied, in that it failed to show what the alleged "collateral agreement" was, or that it in fact constituted any property as security for the debt, or what that debt was originally, or what balance, if any, remains due thereon. Moreover, the receivership granted was of all the property of appellants, whether covered by the alleged contract or not. In fact, appellee's own evidence showed that appellants' stock consisted in part of furniture bought and sold by them for cash, and therefore clearly without the range of the alleged security claimed by appellee. Appellee's evidence further shows that appellants' bank account was comprised in part, at least, of funds upon which appellee can have and asserts no claim, and yet appellants were ordered not to touch those funds, which were diverted into the custody of the receiver. The fact that appellants may have been indebted to appellee in some undisclosed amount and may have had in stock some articles, and some funds in the bank, upon which appellee asserts some sort of claim, did not warrant an injunction prohibiting them from exercising any control over their own stock and funds, upon which appellee admittedly has no claim, or the appointment of a receiver with sweeping authority and instructions to take them into his custody and control.

Moreover, we are of the opinion that the appointment of a receiver was, in effect, the main, if not the only substantial, relief sought in this suit, the injunction being merely incidental to the receivership, with no other specific relief sought. The prayer for an accounting "pending this proceeding for receivership" did not constitute a main suit and independent cause of action, which is essential to support a receivership proceeding. The rule is that, with certain exceptions not applicable here, the right to receivership does not exist apart from some other right constituting an independent cause of acton. 36 Tex.Jur. pp. 18, 20, §§ 6, 7. The case presented here is in contravention of that rule, and appellee did not show itself to be entitled to the relief sought, in the face of that rule.

The judgment is reversed, the receivership vacated, and the cause remanded, generally, for further proceedings.