L. A. TYNES *et al. v.* JACOB SHORE

(No. 8308)

Submitted April 7, 1936. Decided April 28, 1936.

356

*I. Mann Litz* and *Capehart & Miller*, for appellant.
*M. D. Herzbrun*, for appellees.

HATCHER, PRESIDENT:

This is a suit with several ramifications but for the central purpose of holding defendant, Jacob Shore, ultimately liable on obligations which he allegedly incurred while doing business under the name of Miners Motor Company, Inc. . The circuit court found for plaintiff, L. A. Tynes, against the defendant.

In 1926, the Motor Company purchased from Tynes and his associates a certain leasehold, executing a deed of trust thereon to secure the unpaid balance of the purchase price. In 1931, defendant acquired all of the stock of the Motor Company except that of two nominal stockholders. He then assumed absolute control of its affairs. Legal corporate existence of the Motor Company thereafter does not definitely appear. In March, 1932, he and Tynes agreed on the amount remaining unpaid on the leasehold, and Shore delivered to Tynes two notes therefor, of $1,386.14 and $973.91, respectively, signed by the Motor Company. Those notes were payable in fourteen and ten monthly installments, respectively, and were secured by a supplemental deed of trust on the leasehold. There was default in the installments, and sale of the leasehold under the second deed of trust was advertised for February 15, 1933. Defendant personally negotiated with Tynes a postponement of the sale. As a result of the negotiation, Mannie Shore, a son of defendant, executed a contract with Tynes, which recited that Mannie had requested Tynes to postpone the sale, and in consideration of his doing so, Mannie agreed to pay all the taxes against the leasehold, to pay all the costs incident to the proposed trustee's sale, to

pay Tynes all the rentals from the leasehold, to discharge a certain small judgment against the Motor Company, and to keep the buildings on the lease insured against fire. Some time after the sale was postponed, Tynes learned that the taxes on the leasehold for the year of 1930 had been delinquent; that in 1931, defendant had purchased the leasehold at the sheriff's sale for the delinquency, and in 1933 had secured a deed from the clerk therefor. This suit followed.

Defendant testified that he had sold his stock in the Motor Company to Mannie Shore, but could not remember when he did so. Mannie testified that his father owned no stock in the corporation, and that all of the stock had been in his (Mannie's) name "for some time." These assertions of father and son are not consistent either with their conduct or with the other testimony of the father. No certificate of the stock or other corporate evidence of stock ownership was produced. In fact, the defendant admitted burning the corporate records several weeks before he testified, so, as he said, "my eyes couldn't see it any more, the way I got fooled." Mannie Shore was the nominal president of the Motor Company, but he took no part whatever in its management. He was not present nor was any personal right advanced for or recognized in him at any of the conferences between the defendant and Tynes in 1932 and 1933. Witnesses for plaintiff testified that defendant had frequently said he owned and was the Motor Company; that at the first conference with Tynes (1932) defendant stated that the notes of the Motor Company held by Tynes had become his (defendant's) obligation and Tynes was to look to him for payment; that at the second conference with Tynes (1933) defendant promised that he would pay promptly all future installments on the notes, promised that he would perform the covenants undertaken in the name of Mannie Shore, and stated that he was using his son as his agent because his bankers had asked him not to sign any more obligations. The defendant admitted most of this testimony and denied none of it. His whole

testimony shows that he regarded the Motor Company as his exclusive property, its credits as his personal credits, and its debts as his personal obligations. His major defense was that the notes in question had been fully paid. The following quotation from his testimony illustrates his attitude: "If he (Tynes) will come clean and figure it out right like he ought to do, I don't owe him hardly anything, whatever it is, the balance if he owe me he ought to pay me, if I owe him anything I pay him."

The trial chancellor set aside the tax deed in so far as plaintiff's demands were concerned; declared the two trust deeds subsisting liens on the leasehold; and after allowing certain credits, gave Tynes a judgment against defendant for $2,241.90, the balance due on the two Motor Company notes. The defendant's principal brief charges that the circuit court erred (1) in setting aside the tax deed; (2) in refusing to allow further credits on the two notes; and (3) in failing to apply the Statute of Frauds.

The leasehold expired *pendente lite*. Consequently, defendant's first charge involves a moot question and need not now be considered. *State* v. *Lambert*, 52 W. Va. 248, 43 S. E. 176. The further credits claimed by defendant were rejected by the circuit court upon conflicting oral testimony. There is ample evidence to support the finding. We cannot say that it is clearly wrong or against the preponderance of the evidence. Consequently, the finding will not be disturbed and we see no useful purpose in detailing and comparing the evidence. *Snyder* v. *Goldstein*, 115 W. Va. 185, 174 S. E. 897. Whether or not the promise of a person to pay a debt for which he was theretofore not liable is within the Statute of Frauds, depends on intention. If he intended the promise to be collateral, it is within the Statute; if original, it is not. *Security Bank Note Co.* v. *Schrader*, 70 W. Va. 475, 74 S. E. 416, Ann. Cas. 1914 A, 488; 27 C. J., subject, Statute of Frauds, sec. 20. Here the undisputed evidence shows that defendant meant for his promise to be taken as original. Furthermore, the evi-

dence—his own evidence—justifies the finding that the Motor Company is merely a corporate simulacrum appropriated to his personal business; and that the notes in question, though nominally those of the Motor Company, are in fact his personal obligations. "Courts will not permit a person, acting under guise of corporation, to evade individual responsibility." *Dixie Coal Co.* v. *Williams,* 221 Ala. 331, 128 So. 799. Accord: *Wenban Estate* v. *Hewlett,* 193 Cal. 675, 227 Pac. 723; *Gamer Co.* v. *Tuscany,* (Tex. Civ. App.) 264 S. W. 132; *Timber Co.* v. *U. S.,* (C. C. A.) 196 Fed. 593, 598-9; Anderson, Limitations of Corp. Entity, secs. 70 and 72; Fletcher, Cyc. Corporations (Perm. Ed.), sec. 41 at page 136. Hence, defendant's promise is not within the Statute of Frauds. *Donovan* v. *Purtell,* 216 Ill. 629, 75 N. E. 334, 1 L. R. A. (N. S.) 176.

In a supplemental brief, defendant contends that a decree against him personally is not warranted under the allegations and prayer of the bill. The bill states the transactions between the parties; alleges that Shore promised he would personally pay all obligations against the leasehold; and prays (in addition to general relief) for a deficiency judgment against defendant in case the sale of the leasehold did not satisfy the notes. The bill suffices.

The decree is affirmed.

*Affirmed.*