# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: A.G. & D.G.**

**No. 14-0575** (Randolph County 13-JA-18 & 13-JA-19)

**FILED**

November 24, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, by counsel Christopher W. Cooper, appeals the Circuit Court of Randolph County's May 12, 2014, order terminating her parental rights to nine-year-old A.G. and ten-year-old D.G. The Department of Health and Human Resources ("DHHR"), by counsel, Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Matthew H. Fair, also filed a response on behalf of the children in support of the circuit court's order. Petitioner argues on appeal that the circuit court erred in terminating her parental rights because (a) it did not authorize an expert evaluation to determine whether she was a battered parent prior to taking evidence at the adjudicatory hearing and (b) the circuit court should have granted petitioner's motions for disqualification due to an appearance of impropriety.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 16, 2013, the DHHR filed an abuse and neglect petition against petitioner, the children's biological father, and the children's stepfather. The petition alleged that on at least two occasions in May of 2013, petitioner held D.G. down while his stepfather beat him with a metal pipe. Further, the petition alleged that on May 11, 2013, petitioner squirted liquid soap into D.G.'s mouth, and the liquid soap caused D.G. to vomit, at which time petitioner "rubbed [D.G.'s] face in it." Petitioner waived her preliminary hearing on May 23, 2013, and the circuit court set the matter for adjudication. At no time prior to the adjudicatory hearing held on June 19, 2013, did petitioner request, orally or in writing, authorization by the court for an expert evaluation to determine whether she was a battered parent. Petitioner first made that request orally, accompanied by an oral motion to continue the proceedings, at the adjudicatory hearing. At that time, the circuit court denied the motions and proceeded to adjudication.

At the adjudicatory hearing, a West Virginia State Police trooper testified that, based upon a complaint made to Child Protective Services ("CPS"), he and a CPS worker interviewed the children. Both the trooper and the CPS worker testified that the children stated that their stepfather struck them multiple times with the metal pipe, and according to D.G., petitioner held him down while the stepfather struck him. The CPS worker also testified that, according to D.G.,

1

petitioner poured liquid soup down his throat and when he vomited he had to clean it up. According to the CPS worker, the stepfather struck D.G. approximately sixty times during the incident. The trooper testified that D.G. showed "quite substantial" bruising at the time of the interviews. Petitioner testified that she and the stepfather had a violent relationship. She claimed he was abusive and controlling, and she had to provide sexual favors for an "allowance." She also described an incident during which she struck him for breaking her vehicle's window while her children were in the vehicle. At the conclusion of the hearing, the circuit court held its ruling in abeyance and requested proposed adjudicatory orders. Petitioner renewed her motion for an expert forensic evaluation as to whether she was a battered parent, and the circuit court granted the renewed motion. However, the record does not contain a report from or any further discussion of an expert in this regard.

On July 30, 2013, more than a month after the adjudicatory hearing, the circuit court entered an order adjudicating the children as abused and neglected by petitioner, the stepfather, and the biological father. The circuit court specifically found that petitioner did not meet the definition of a battered parent under West Virginia Code § 49-1-3(3).

On October 16, 2013, petitioner's counsel and others, including the Randolph County Prosecuting Attorney's Office, filed judicial ethics complaints against Judge Wilfong. The ethics complaints alleged that she utilized her office to conceal and further the interests of an inappropriate relationship with the director of the North Central Community Corrections Program, who in person or by proxy was an actor in over forty criminal cases over which Judge Wilfong presided. As it relates the case *sub judice*, petitioner claims that because her counsel was one of the complainants and because the Randolph County Prosecutor's Office, who represented the DHHR herein, was later alleged by Judge Wilfong to have knowledge of the affair, Judge Wilfong should have disqualified herself from these proceedings. On October 30, 2013, Judge Wilfong held a hearing to disclose the ethics complaints and their implications on this proceeding on the record.[1] On November 20, 2013, petitioner filed a written motion to disqualify Judge Wilfong because petitioner's counsel was one of the complainants. Judge Wilfong denied the written motion, and submitted it to the Chief Justice of this Court, pursuant to Rule 17 of the West Virginia Trial Court Rules. On December 4, 2013, this Court entered an Administrative Order denying petitioner's written motion to disqualify because the motion lacked sufficient evidence to warrant relief.

On January 27, 2014, the circuit court held a dispositional hearing. The CPS worker testified that neither child wished to return to petitioner. According to the CPS worker, D.G. referred to petitioner as the "bad mom" and the "mean mom" who "attempt[ed] to kill him at one point in time." Petitioner admitted in her testimony that she (a) failed to protect the children from the stepfather; (b) witnessed the stepfather physically abuse D.G. on multiple occasions; and (c) put liquid soup in D.G.'s mouth. The DHHR and the GAL moved for termination of petitioner's

[1]At the October 30, 2013, hearing, petitioner's counsel orally moved Judge Wilfong to disqualify and recuse herself from further involvement in the case. Judge Wilfong denied the oral motion, but sent a letter to the Chief Justice of this Court notifying him of the request, pursuant to Rule 17 of the West Virginia Trial Court Rules. On November 13, 2013, this Court entered an Administrative Order denying petitioner's oral motion without prejudice because the motion did not comply with Rule 17.

parental rights, based upon the evidence presented. In response, the circuit court terminated petitioner's parental rights to both children.

On April 23, 2014, the Judicial Investigation Commission filed a formal statement of charges against Judge Wilfong based on the complaints of October of 2013. After Judge Wilfong filed her response, the Prosecuting Attorney of Randolph County filed a petition for disqualification of Judge Wilfong from all cases prosecuted or otherwise handled by that office. On May 1, 2014, the Chief Justice of this Court signed an Administrative Order disqualifying Judge Wilfong from all cases prosecuted or otherwise handled by the Randolph County Prosecuting Attorney's Office. Petitioner now appeals the order terminating her parental rights to her two children.

This Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred when it denied her motion for an expert evaluation to determine whether she was a "battered parent" under West Virginia Code § 49-1-3(3). Petitioner asserts that the circuit court, by denying her motion, failed to provide her a meaningful opportunity to be heard, pursuant to both statutory and constitutional commands. However, we find that this issue is moot. "Courts will not ordinarily decide a moot question." Syl. Pt. 1, *Tynes v. Shore*, 117 W.Va. 355, 185 S.E. 845 (1936). "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. Pt. 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908). Although the circuit court initially denied petitioner's motion for an expert evaluation at the outset of the June 19, 2013, hearing, at the conclusion of that hearing, the circuit court revisited petitioner's motion and granted the same. The circuit court also authorized petitioner to spend up to $1,500 in evaluation costs. The circuit court did not enter an adjudicatory order until July 30, 2013, which provided petitioner over a month to seek and present evidence to the circuit court or to request more time to do so.[2]

---

[2]The record is silent as to what further steps, if any, petitioner took to undergo this evaluation once authorized.

Therefore, petitioner's motion was granted, and her argument is moot. To the extent petitioner argues that the circuit court erred in denying a motion for continuance of the June 19, 2013, hearing, we find no error in this regard. Petitioner first raised issue of a expert evaluation at the outset of the June 19, 2013, hearing, and the circuit court correctly weighed petitioner's rights against the requirement to avoid unnecessary delay. This Court has continually expressed its concern over the all-too-frequent delays accompanying abuse and neglect proceedings. Circuit courts must consider these proceedings among their highest priority because "[u]njustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In the Interest of Carlita B*., 185 W.Va. 613, 408 S.E.2d 365 (1991).

Petitioner's second and final assignment of error concerns her motions to disqualify the circuit judge in this matter. Petitioner argues that because Judge Wilfong was, ultimately, disqualified by this Court from all cases handled by the Randolph County Prosecuting Attorney's Office that she should have disqualified herself from this matter at the time of petitioner's motions. After our review of the record, we find no error as to this issue. This Court has held that "a violation of the above recusal standard involving only the appearance of impropriety does not automatically require a new trial." *Tennant v. Marion Health Care Foundation, Inc*., 194 W.Va. 97, 109, 459 S.E.2d 374, 386 (1995). First, we considered petitioner's disqualification motions when properly submitted in October and November of 2013. Both were denied, and we specifically found insufficient evidence to disqualify Judge Wilfong from petitioner's case, pursuant to the burden established under Rule 17 of the West Virginia Trial Court Rules. Second, although this Court disqualified Judge Wilfong five months after the dispositional hearing in this matter, we disqualified her from all cases involving the Randolph County Prosecuting Attorney's Office "to avoid even an appearance of impropriety."

Last, we note that this is not an ethics proceeding. Judge Wilfong's disqualification arose from concerns with the Randolph County Prosecuting Attorney's Office, who in this proceeding represented the DHHR. When substantial rights of a party are not affected, reversal is not appropriate. *Id*. at 111, S.E.2d at 388. Petitioner has failed to demonstrate any actual bias or prejudice to her in this matter affecting her substantial rights. Moreover, the evidence presented against petitioner was overwhelming. Several witnesses testified that petitioner held D.G. down while the stepfather repeatedly beat him with a metal pipe causing substantial bruising, and the CPS worker testified that petitioner poured liquid soup in his mouth, causing him to become ill. The stepfather admitted he struck the children with the metal pipe, and at the dispositional hearing, under cross-examination, petitioner admitted, among other things, to having put liquid soup into the child's mouth. Therefore, we find no error with regards to judicial disqualification.

Therefore, for the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 24, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II