## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: D.J. & R.D.**

**FILED**

August 31, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 14-1128** (Monongalia County 12-JA-38 & 12-JA-40)

## MEMORANDUM DECISION

Petitioner Father T.D., by counsel Cheryl L. Warman, appeals the Circuit Court of Monongalia County's September 29, 2014, order terminating his parental rights to R.D. and placing D.J. in the legal guardianship of his paternal aunt.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Frances C. Whiteman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in finding that he abused and neglected the children due to his substance and sexual abuse and in terminating his parental rights to R.D. based on those findings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2012, the DHHR filed its first abuse and neglect petition against petitioner and his then-live-in girlfriend, C.A., who is R.D.'s biological mother but not D.J.'s biological mother. The DHHR alleged that petitioner and C.A. provided unsanitary and unsafe housing conditions, abused illicit substances, and failed to provide adequate supervision for the children. The children were removed and placed with their paternal aunt. In August of 2012, petitioner stipulated to those allegations and received an improvement period. In July of 2013, immediately prior to the final dispositional hearing, petitioner provided a drug screen sample. However, before receiving its results, the circuit court entered a dispositional order based on petitioner's

---

[1]In May of 2015, this Court affirmed C.A.'s related appeal of the circuit court's final dispositional order. *See In re: V.S. & R.D.*, No. 14-1129 (W.Va. Supreme Court, May 18, 2015) (memorandum decision). We also note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

successful completion of his improvement period, returning custody of R.D. to petitioner and C.A. D.J. continued to reside with the paternal aunt.

Following that final dispositional order, petitioner's drug screen tested positive for hydromorphone and opiates. In late August of 2013, the DHHR filed its first amended abuse and neglect petition against petitioner and C.A. alleging continued substance abuse. The DHHR claimed that, in addition to the positive drug screen, Child Protective Services ("CPS") received a referral that petitioner and C.A. continued to use drugs in the home, and the children confirmed that continued drug use in a subsequent CPS interview. Upon filing the amended petition, the DHHR removed R.D. from petitioner's home and placed her in foster care. D.J. remained in placement with his paternal aunt.

In October of 2013, the circuit court held an adjudicatory hearing on the first amended petition. The CPS worker testified as to petitioner's failed drug screen and the children's disclosure that both petitioner and C.A. continued to use drugs in the home. Based on this evidence, the circuit court adjudicated petitioner as an abusing parent.

Prior to final disposition on the first amended petition, the DHHR filed its second amended petition against petitioner and C.A. In the second amended petition, the DHHR alleged that R.D. disclosed to the foster mother and a medical provider that petitioner had sexually abused her. Those disclosures included, inter alia, allegations that petitioner (1) put his mouth "down there," (2) "put his peter bug in [her] cooter bug and butt"; (3) took naked pictures of her, and (4) sexually abused her half-sister, V.S.[2]

Between April and May of 2014, the circuit court held several adjudicatory hearings on the second amended petition. The DHHR called multiple witnesses to testify about R.D.'s disclosures of sexual abuse by petitioner, including R.D.'s foster mother, an expert medical provider, a CPS worker, and the forensic interviewer. In their defense, petitioner and C.A. presented the testimony of Dr. Joseph Wyatt, an expert in the field of clinical psychology and child sexual abuse, who testified that R.D.'s statements were inconsistent and unreliable, although he admitted that differences in the child's accounts may have been the result of the sexual abuse occurring on more than one occasion. Dr. Wyatt also testified that if the circuit court did not find abuse or neglect that the children should not be sent home with petitioner and C.A. without a supervised visitation period of one or two years. Petitioner testified on his own behalf that he did not commit abuse or neglect and did not sexually abuse or take any naked pictures of any children. Based on this testimony, the circuit court entered an adjudicatory order finding that petitioner sexually abused R.D.

In September of 2014, the circuit court held two dispositional hearings on the second amended petition. At those hearings, the circuit court heard testimony that petitioner denied any sexual abuse in the home. Testimony further established that petitioner failed to comply with his drug screens, as he had not provided a sample for drug screening in approximately five months. Based on the evidence presented, the circuit court found that (1) an improvement period was not

---

[2]V.S. is not petitioner's biological child, and that child is not at issue in this appeal.

warranted, as petitioner failed to admit the problem such that he could improve and correct that problem with services; (2) there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future; and (3) termination was in the child's best interests. On September 5, 2014, the circuit court terminated petitioner's parental rights to R.D. but granted legal guardianship of D.J. to his paternal aunt.[3] The circuit court also granted petitioner supervised visitation with D.J. The circuit court entered its dispositional order reflecting its rulings on September 29, 2014, and this appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first assigns error to the circuit court's finding that he committed abuse and/or neglect of the children based on his substance abuse issues, as alleged in the first amended petition. However, petitioner fails to demonstrate how such an error would impact the circuit court's September 29, 2014, dispositional order, given the uncontested fact that he was subsequently adjudicated based on the DHHR's second amended petition. Any error with regard to the adjudication based on the first amended petition has been rendered moot by the subsequent adjudication based on the second amended petition. "Courts will not ordinarily decide a moot question." Syl. Pt. 1, *Tynes v. Shore*, 117 W.Va. 355, 185 S.E. 845 (1936). A favorable decision by this Court on this issue would avail petitioner nothing with regard to his parental rights under the circuit court's final dispositional order. However, if this issue were not moot, we would find no error. While petitioner claims that he was not a habitual drug abuser, he further admits that the circuit court heard evidence that he tested positive for opiates on six drug screens and had five abnormal samples between June of 2012 and September of 2013, while abuse and neglect proceedings were on-going. Additionally, the record clearly reveals that petitioner had previously stipulated to abuse and neglect based on his drug use; that the DHHR received referrals as to continued drug use in the home; and, most notably, the children confirmed the

---

[3]The circuit court also terminated the parental rights of D.J.'s mother due to abandonment.

continued drug use in the home. Based on the evidence presented, we could find no error in this regard if properly presented for appellate review.

Next, petitioner argues that the circuit court erred in finding that petitioner sexually abused his daughter, R.D., as alleged in the second amended petition. While petitioner claims that the DHHR failed to prove sexual abuse by clear and convincing evidence, we disagree. The DHHR presented several independent witnesses, including the foster mother, a medical provider, and a CPS worker who all testified that the child disclosed sexual abuse by petitioner. We have previously held in the context of criminal procedure, which employs a higher burden of proof than civil abuse and neglect proceedings, that "'[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible[.]' Syllabus Point 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)." *Coleman v. Painter*, 215 W.Va. 592, 598-99, 600 S.E.2d 304, 310-11 (2004); s*ee also* W.Va. Code § 49-6-5(a)(7)(A) and (B)(v) (stating that "the [DHHR] is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has . . . committed sexual assault or sexual abuse of the child, the child's other parent . . . ."). Although petitioner is correct that he, C.A., and his expert presented evidence contrary to the allegations of sexual abuse, the circuit court properly considered and weighed the evidence and rendered findings of fact that we will not disturb on appeal. *See In re: Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (stating that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." (citations omitted)). As the circuit court is the entity charged with weighing the evidence and rendering findings of fact, we find no error in its finding that R.D.'s disclosures of sexual abuse by petitioner to multiple, independent people on multiple occasions was clear and convincing evidence that the same occurred.

Petitioner places great weight on the testimony of his expert witness, Dr. Wyatt. To the extent the circuit court found that Dr. Wyatt testified that the child's disclosures were "reliable" based on his testimony, we find no reversible error in such a finding. Although petitioner is correct that Dr. Wyatt testified that, in his opinion, the child's disclosures were inconsistent and unreliable, he further testified that if the circuit court did not find abuse or neglect that the children should not be sent home with petitioner and C.A. without a supervised visitation period of one or two years. The circuit court noted this additional testimony in its findings regarding Dr. Wyatt. This additional recommendation of a supervised visitation period could have led the circuit court to determine that Dr. Wyatt relied, at least in part, on the child's disclosures. Therefore, the circuit court could have concluded that, having relied upon the child's disclosures, Dr. Wyatt found them to be reliable. However, any error committed by the circuit court in this regard, if any occurred, was harmless. The circuit court noted that Dr. Wyatt testified that the child's disclosures were inconsistent and considered his testimony prior to rendering its findings. However, the circuit court found that it did not agree with Dr. Wyatt's assessment of the child's disclosures given the remaining evidence presented. To the contrary, the circuit court found that the evidence of the child's disclosures was sufficient. We find no reversible error in the circuit court's finding that petitioner sexually abused R.D.

We also note that while petitioner argues that the circuit court committed error in considering the DHHR's prepared "court summaries," which summarize the proceedings and

4

other issues of concern, we find no reversible error in this regard. If any error occurred in their consideration, such error is harmless given the remaining evidence presented.

Petitioner's third and final assignment of error is that the circuit court erred in terminating petitioner's parental rights to R.D. However, petitioner's claim is premised on the presumption that we would find the circuit court's findings of abuse and neglect erroneous, as alleged in his first two assignments of error above. Given that we found no error in the circuit court's underlying finding of sexual abuse, which constituted abuse and neglect of R.D., we find no error in the circuit court's termination of petitioner's parental rights to that child. Based, in part, on its finding that petitioner sexually abused R.D., the circuit court then found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was in the child's best interests. West Virginia Code § 49-6-5(b)(5) provides that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" exists when

> [t]he abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child.

Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings. Moreover, the circuit court found that petitioner failed to acknowledge the conditions of abuse and neglect and failed to participate in drug screenings for approximately five months prior to the final dispositional hearing. As such, we find no error in this regard.

Therefore, we find no error in the decision of the circuit court, and its September 29, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II