# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**NICOLE BOOKER,**
**Defendant Below, Petitioner**

**v.) No. 24-ICA-280**        (Cir. Ct. Berkeley Cnty. Case No. CC-02-2024-C-AP-11)

**WOODSIDE a Linden Community,**
**Plaintiff Below, Respondent**

**FILED**
**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Nicole Booker appeals the June 5, 2024, order from the Circuit Court of Berkeley County which denied her magistrate court appeal and awarded judgment and costs to respondent Woodside. Woodside filed a summary response in support of the circuit court's order.[1] Ms. Booker filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

By way of background, Ms. Booker is a single mother participating in the Section 8 Housing Choice Voucher program ("Section 8"). On August 31, 2023, Ms. Booker entered into a lease agreement ("Lease") for a rental unit at Woodside, a residential housing community. Ms. Booker listed herself and four of her minor children as household members of the apartment. According to the Lease, they were to be the apartment's only occupants. Among its terms and conditions, the Lease included the following relevant language:

> LIMITATIONS ON CONDUCT. The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property[.]

---

[1] Ms. Booker is represented by Carolyn J. Beyer, Esq., and Amanda K. Gavin, Esq. Woodside is represented by Liana L. Stinson, Esq.

PROHIBITED CONDUCT. You, your occupants or guests, or the guests of any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community[.]

The Lease also required Ms. Booker to give notice before vacating the apartment. Further, it set forth Woodside's legal remedies in the event of default, which included its right to recover attorney's fees and litigation costs, stating that "[u]nless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs."

Additionally, as a Section 8 tenant, Ms. Booker was also required to enter into a lease contract addendum ("Addendum") which was incorporated into her Lease. As part of its terms, the Addendum states:

Owner shall have the right to terminate the lease or right of occupancy of any Section 8 . . . resident for serious or repeated violation of material terms of the lease or any material non-compliance or other good cause . . . pursuant to 24 C.F.R. [§] 966.4. A serious or material violation or breach of the Lease Contract and this addendum includes, but is not limited to, failure to make rent payments under the lease; failure to fulfill household obligations as described in 24 C.F.R. [§] 966.4(f).

Included within the *household obligations* are the requirements that a Section 8 tenant must: "keep the dwelling unit and such other areas as may be assigned to the tenant for the tenant's exclusive use in a clean and safe condition"; "dispose of all ashes, garbage, rubbish, and other waste from the dwelling unit in a sanitary and safe manner"; and "act, and cause household members or guests to act, in a manner which will not disturb other residents' peaceful enjoyment of their accommodations and will be conducive to maintaining the project in a decent, safe and sanitary condition[.]" 24 C. F. R. § 966.4(f)(6)-(7), (11) (2023).

The Addendum also contains a prohibition against unauthorized occupants. This provision further states: "Failure to comply with this provision is a substantial and material violation of this addendum and the Lease contract, and you may be evicted or relocated for material non-compliance."

Ms. Booker moved into her apartment on September 1, 2023. Shortly thereafter, Woodside hired a new property manager, Mr. Hamlette. According to Ms. Booker, Mr. Hamlette routinely cited her for what she described as "trivial and petty infractions" of the Lease and Addendum. According to the record, Mr. Hamlette cited Ms. Booker on November 15, 2023, for a noise complaint at her residence involving screaming, cussing, banging, and slamming doors; November 21, 2023, for having trash and cigarette butts on

2

her apartment's porches; December 26, 2023, after one of Ms. Booker's children threatened and cursed another resident; February 26, 2024, for a car seat, trash bag, metal bucket, boxes, and a two-ton car jack on the back porch; March 5, 2024, after one of her children engaged in a physical altercation at the apartment complex with another child; March 7, 2024, for a booster seat and trash bag on the back porch; April 5, 2024, and April 8, 2024, for a car jack, gas can, and bucket on the front porch; April 17, 2024, for a car seat and miscellaneous items on the front porch; and April 18, 2024, for miscellaneous items on the front porch. Although specific dates are not in the record, Ms. Booker was also cited for permitting unauthorized persons to occupy her apartment. These individuals were her adult son and the father of her children. While Ms. Booker contests the length of time Woodside claims either individual stayed at her apartment, she does not dispute that these individuals were not listed on the Lease or Addendum and were not previously approved by Woodside's management.

On February 20, 2024, Woodside provided Ms. Booker with notice to either cure her lease violations within twenty-one days or vacate the apartment within thirty days ("21/30 Notice"). The 21/30 Notice referenced Ms. Booker's earlier citations related to such things as trash, noise complaints, unauthorized occupants, as well as the behaviors of her children.[2] In circuit court, Ms. Booker testified that she did not receive the notice because after receiving several violations she stopped looking at them and instructed her children to put them in a drawer.

Thereafter, Woodside filed its petition for wrongful occupation on March 7, 2024, in magistrate court, alleging that Ms. Booker had violated terms of the Lease and Addendum. Woodside sought an order directing Ms. Booker to vacate the property and awarding it possession. *See* W. Va. Code § 55-3A-1 (1983). Ms. Booker did not file an answer and was self-represented during the magistrate court bench trial, which was held on March 26, 2024. The magistrate court awarded Woodside possession of the premises and court costs of $76.68, and directed Ms. Booker to vacate the premises by April 8, 2024. Ms. Woodside appealed this ruling to circuit court and the matter was set for a de novo bench trial on June 4, 2024. In the interim, Ms. Booker vacated the premises without providing notice to Woodside as required by the Lease.

At the outset of trial, the parties raised no preliminary issues and informed the circuit court that they were prepared to try the case on its merits. Thereafter, Mr. Hamlette testified as to Ms. Booker's violations of the Lease and Addendum as identified in the citations issued to her between November of 2023 and April of 2024. In her case in chief, Ms.

---

[2] The record further illustrates that Ms. Booker was cited for having unauthorized items hanging from her apartment's windows. This violation was included along with Ms. Booker's other violations in the 21/30 Notice, and there was testimony regarding this violation in circuit court. The circuit court's order does not address this alleged violation which consequently plays no part in our decision.

Booker testified that she had minimal control over the actions of her children or their behaviors, and that her children's actions were in retaliation for treatment they received from others. She also attempted to testify as to Woodside's alleged violations of the West Virginia Fair Housing Act ("Housing Act") as a defense and counterclaim to the underlying petition. On this issue, Ms. Booker maintained that Mr. Hamlette exhibited a perceived bias against her because of her status as a single mother, and unfairly targeted her through multiple citations for trivial violations. However, the circuit court sustained Woodside's objection, finding that Ms. Booker had not filed any pleading placing the Housing Act at issue. After the circuit court's ruling, Ms. Booker's counsel did not place an objection upon the record; rather counsel simply responded by stating, "Well, we'll just go forward then, Your Honor." Ms. Booker also maintained the general opinion that even if she committed technical violations of the Lease and Addendum, they did not warrant her eviction.

During closing arguments, Ms. Booker's counsel asserted for the first time that the case should be dismissed as moot so that Ms. Booker could avoid having an eviction on her record which could affect her eligibility for participation in Section 8. Specifically, her counsel stated:

> This is the first eviction matter I have represented a client in -- where the client has actually left voluntarily, and surrendered possession of the unit, and the rent is one hundred percent paid, and the landlord still proceeds. It is baffling why [Woodside] would require an eviction in this matter. The only thing at issue is court costs. Mr. Hamlette was advised at the last court hearing that he could enter the unit. That she had surrendered it . . . . I think the only reason to proceed is to punish Ms. Booker[.]

The hearing adjourned and the circuit court took the matter under advisement. On June 5, 2024, the circuit court issued the order presently on appeal. In its order, the circuit court found that Ms. Booker's testimony was less credible than Mr. Hamlette's testimony. The circuit court found that the Lease and Addendum were contracts by which Ms. Booker had agreed to abide by various terms and conditions. Namely, it was noted that Ms. Booker agreed that she and those occupying her residence would keep the exterior of her unit free of trash and debris, as well as refrain from loud, obnoxious, and threatening behaviors. Ms. Booker was also prohibited from having unauthorized individuals occupy the apartment. Based upon the evidence, the circuit court concluded that Ms. Booker had been cited for multiple violations, and that the evidence supported a finding that Ms. Booker had committed those violations and breached the Lease and Addendum.

The circuit court also found that while Ms. Booker testified that she vacated the property, she did not give proper notice and only left the apartment after the magistrate court's ruling. It found no merit in Ms. Booker's contention that she wanted to dismiss the action to avoid having an eviction on her record. Instead, the court found that she had breached her contractual obligations and had exhibited hostility towards the terms of the

Lease and Addendum. The circuit court awarded Woodside possession of the property and costs in the amount of $76.68. This appeal followed.

On appeal, we apply the following standard of review:

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997).

Ms. Booker raises three assignments of error. We begin by addressing her contention that the circuit court erred when it failed to dismiss the case as moot. She contends that once she vacated the premises, there was no longer an issue in controversy because Woodside could only seek possession of the premises in a wrongful occupation case. *See* W. Va. Code § 55-3A-1. Thus, she asserts that there were no remaining remedies available to Woodside. Yet, Ms. Booker acknowledges that Woodside's recovery of court costs was still at issue but maintains the circuit court should have dismissed the case as moot and required Woodside to seek recovery in a separate proceeding. We disagree.

We acknowledge that as a general rule, a moot case cannot be considered on its merits. As the Supreme Court of Appeals of West Virginia ("SCAWV") has previously explained: "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. Pt. 1, *State ex rel. Lilly v. Carter,* 63 W. Va. 684, 60 S.E. 873 (1908). *See also* Syl. Pt. 1, *Tynes v. Shore,* 117 W. Va. 355, 185 S.E. 845 (1936) ("Courts will not ordinarily decide a moot question.").

However, "[w]hether a case has been rendered moot depends upon an examination of the particular facts of a case. Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 155, 697 S.E.2d 740, 747 (2010) (quotations and citations omitted). "A case only 'becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party; as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *DD Oil Co. v. State ex rel. Ward*, 249 W. Va. 483, 491, 896 S.E.2d 456, 464 (Ct. App. 2023) (citations omitted).

Indeed, "once the issue of mootness has been raised, '[t]he heavy burden of persua[ding] the court that the [case has been rendered moot] lies with the party asserting mootness.'" *Mazzone* at 156, 697 S.E.2d at 748 (citations omitted). Given the facts of this

5

case, Ms. Booker did not satisfy her burden of persuasion. As evidenced by the record, the issue of mootness was first raised by Ms. Booker's counsel in her closing arguments; at no time did she object to proceeding with the bench trial, and more importantly, according to the trial transcript, Ms. Booker's counsel conceded on more than one occasion to the circuit court that Woodside's request for court costs was still at issue. Significantly, the Lease expressly provides that a prevailing party may seek to recover its attorney's fees and litigation costs. Moreover, Ms. Booker offers no authority to support her nebulous contention that Woodside should be required to pursue recovery of its costs in a separate civil proceeding. Because Woodside prevailed, the Lease permitted it to seek recoupment of its litigation costs from Ms. Booker in this proceeding. Thus, we conclude that the case was not moot. Accordingly, the circuit court did not err by ruling on the merits.

Next, Ms. Booker contends that the circuit court applied the wrong legal standard to the facts of this case; namely, she contends that pursuant to the Addendum, there are limited grounds upon which Woodside could seek to evict her. It is her position that the circuit court erred by failing to afford her those protections when it determined that she had violated the terms of her leasehold. We disagree.

We begin by observing that the Lease and Addendum are contracts. "[A] lease of a residential dwelling unit is to be treated and construed as any other contract[.]" *Teller v. McCoy*, 162 W. Va. 367, 384, 253 S.E.2d 114, 125 (1978). Because it is generally a question of law, "we apply a *de novo* standard of review to [a] circuit court's interpretation of [a] contract." *Finch v. Inspectech, LLC*, 229 W. Va. 147, 153, 727 S.E.2d 823, 829 (2012) (citation omitted).

Pursuant to both agreements, Ms. Booker was contractually obligated to abide by certain terms and conditions. For example, in unambiguous terms, the Lease states that Ms. Booker was required to keep the apartment, areas of private use, passageways, and common areas clean and unobstructed by trash, garbage, debris, and personal property; and prohibited her from engaging in loud and obnoxious conduct, disturbing or threatening others, and having unauthorized individuals occupying or living in the apartment. Similarly, the Addendum expressly stated that, among other things, Ms. Booker was required to maintain her apartment and surrounding areas in a clean and safe condition; properly dispose of all refuse; act in a manner that did not disturb others; and not have unauthorized occupants in her apartment. Moreover, both agreements plainly state that these terms applied to Ms. Booker, her household members, and guests.

Below, the circuit court determined that Ms. Booker violated both contracts by failing to keep areas around her apartment free of trash and debris; by permitting her children to engage in multiple instances of loud, obnoxious, and threatening behavior; as well as by allowing unauthorized individuals to occupy the apartment. On appeal, Ms. Booker contends that the evidence does not support any of the violations found by the circuit court. However, after considering the record in this case, we conclude that the circuit

6

court's determinations are supported by the evidence and, thus, we decline to disturb the circuit court's finding that Ms. Booker breached the Lease and Addendum.

In her final assignment of error, Ms. Booker asserts that the circuit court erred when it prevented her presentation of evidence at trial with respect to the Housing Act and Mr. Hamlette's alleged conduct. According to Ms. Booker, she should have been permitted to raise this evidence as a defense to Woodside's wrongful occupation claim. We disagree and find that the circuit court properly excluded this issue at trial.

First, there is no indication from the record that Ms. Booker sufficiently preserved an objection on this issue for appeal. Rather, according to the trial transcript, when the circuit court ruled on this issue, no objection was offered by Ms. Booker's counsel. Instead counsel simply responded that Ms. Booker would proceed with presenting the remainder of her case. While our law does not require a party to use boilerplate language to preserve an objection, it does require that: "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. Pt. 2, *Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996). Here, the response from counsel was not articulated with sufficient distinction so as to preserve the issue.

Second, even if an objection were properly preserved, we conclude that Ms. Booker would still be foreclosed from relief on this issue in the present case. As previously established, Ms. Booker did not file an answer or assert any counterclaim regarding the Housing Act in magistrate court. We begin by noting Rule 5 of the Rules of Civil Procedure for Magistrate Courts which states:

(a) **Counterclaim.** A defendant may state as a counterclaim any claim that the defendant has against the plaintiff that is within the jurisdiction of magistrate court. Such counterclaim may be stated together with the defendant's answer and may be filed and served in the same manner as the defendant's answer, without additional cost. A reply to a counterclaim shall not be required.

(b) **Failure to File Counterclaim.** The failure of a defendant to institute a counterclaim permitted by this rule shall not preclude the institution of a separate action on such claim at a later time.

However, as evidenced by recent decisions by the SCAWV, this Rule does not permit Ms. Booker to raise this issue for the first time in her appeal to circuit court.

In *State ex rel. Veard v. Miller*, 238 W. Va. 333, 795 S.E.2d 55 (2016), a plaintiff raised an unpaid wages counterclaim in magistrate court and then appealed the magistrate's ruling to circuit court. Shortly after filing the appeal, plaintiff initiated a separate circuit court proceeding alleging wrongful termination. The circuit court consolidated the

7

magistrate appeal and new complaint. Employer filed a motion to dismiss the new complaint, which the circuit court denied, and employer filed a writ of prohibition. The SCAWV granted the writ and found, among other things, that the circuit court did not have jurisdiction over the wrongful termination claim as it was not embraced by the unpaid wages counterclaim. Relevant here, *Veard* held:

> A circuit court may not allow an amendment for an additional cause of action, on appeal from a magistrate court judgment, that does not embrace the original magistrate court pleading. An amendment is allowed only to supply any deficiency or omission in the original pleading, not to inject a new item or cause of action not embraced by the original pleading.

*Veard* at 333, 795 S.E.2d at 55, syl. pt. 4. *see also id*. at 339, 795 S.E.2d at 61 (recognizing that our code and rules of civil procedure prevent discovery in circuit court following a magistrate court appeal).

Nearly a year later, the SCAWV further clarified the scope of the circuit court's authority when hearing an appeal following a bench trial in magistrate court. In *State ex rel. DeCourcy v. Dent*, 240 W. Va. 163, 807 S.E.2d 834 (2017), the SCAWV addressed as a matter of first impression whether the circuit court erred by permitting new evidence in the form of witness testimony not previously presented before the magistrate court. In other words, the issue was whether the record in a civil bench trial in magistrate court limits the scope of evidence that the circuit court may consider on appeal. The SCAWV noted that pursuant to West Virginia Code § 50-5-8(f) (1994), nonjury trials in magistrate court are not proceedings of record. The SCAWV further noted that West Virginia Code § 50-5-12(d)(1) states that in civil appeals from bench trials in magistrate court, "[t]he exhibits, together with all papers and requests filed in the proceeding, constitute the exclusive record for appeal and shall be made available to the parties." However, the SCAWV found that new evidence in the form of witness testimony was not contemplated as part of the "exclusive record for appeal." As a result, *DeCourcy* established the following syllabus point:

> An appeal of a civil action tried before a magistrate without a jury under West Virginia Code § 50-5-12(b) (2016) shall be a trial de novo, meaning a new trial in which the parties may present new evidence including witness testimony not presented in magistrate court.

*DeCourcy* at 163, 807 S.E.2d at 834, syl. pt. 3. Further, in a footnote, *DeCourcy* expressly recognized:

> We acknowledge that other restrictions affect the circuit court's authority on appeal, including those regarding discovery and pleadings set forth in Rule 81(a)(1) of the Rules of Civil Procedure. In addition, we have held:

8

> A circuit court may not allow an amendment for an additional cause of action, on appeal from a magistrate court judgment, that does not embrace the original magistrate court pleading. An amendment is allowed only to supply any deficiency or omission in the original pleading, not to inject a new item or cause of action not embraced by the original pleading.
>
> Syl. Pt. 4, *State ex rel. Veard v. Miller*, 238 W.Va. 333, 795 S.E.2d 55 (2016).

*Id.* at 167 n.17, 807 S.E.2d at 838 n.17.

While this controlling precedent is not analyzed by the circuit court or the parties on appeal, it is evident from *Veard* and *DeCourcy*, that Ms. Booker's claim could not be raised for the first time through her circuit court appeal. Due to Ms. Booker's failure to raise the Housing Act through an answer or counterclaim in magistrate court, the parties could not engage in discovery or otherwise place Woodside on notice of the issue for trial. Thus, procedurally, Ms. Booker's Housing Act claims were only permissible through a separate proceeding. As such, the circuit court did not err by declining to consider the same at trial.

Accordingly, we find no error and affirm the circuit court's June 5, 2024, order.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Judge Daniel W. Greear
Judge S. Ryan White

Chief Judge Charles O. Lorensen, not participating